Commonwealth *v.* Baranowski, Appellant.

Submitted March 17, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Sanford Kahn,* for appellant.

*James D. Crawford,* Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, June 12, 1969:
Order affirmed.

---

DISSENTING OPINION BY HOFFMAN, J.:

This case raises a question as to whether appellant was represented by a lawyer who had a conflict of interest in the criminal proceedings which led to his conviction and sentence.

At the post-conviction hearing the stipulated records of the Defender's Association of Philadelphia were introduced. They established the following:

Appellant and his co-defendant, when in prison awaiting trial, were interviewed separately by the same Defender on April 3, 1951.

At that time, appellant told the Defender, "I'm not guilty on any of these charges. I don't know anything about any of these charges. . . . On the night of my arrest I carried a gun for my protection. I bought it from a numbers writer but I do not know anything about any of these robberies." He also commented that he "intended to plead not guilty to all Bills."

The co-defendant, however, stated to the Defender that "as to the four charges he was facing, he was guilty of two of those four, he had committed them, and he told the police he was guilty of these two and that *he implicated his co-defendant* (appellant). He told the police he did it and (appellant was with him)." Specifically, he stated "I told the detectives I was involved in three armed robberies with (appellant)."

No further interview relating to these offenses was held with the Defender by either appellant or his co-defendant prior to their joint trial. At trial, the same Defender who had interviewed the co-defendants represented them. Pleas of guilty were entered for both as to those crimes for which appellant had been implicated by his co-defendant. Pleas of not guilty were entered on the remaining two indictments.

Both appellant and his co-defendant were found guilty on all counts.

Prior to sentencing, the Defender stated by way of exculpation that, "(w)ith reference to (appellant), we had him once before and his mother is here and he has had a poor background and he seems to be more like a child. He does not seem to be able to realize the seriousness of these things that he does and he seems to have been, particularly in this case, to have been led."

The Defender, however, failed to bring to the court's attention an investigative report by the Chief Investigator for the Defenders, referring to appellant's co-defendant which stated: "I spoke to Detective Clark who stated the defendant is a bad egg, one of a group of boys suspected of numerous thefts in the neighborhood." The court sentenced both appellant and his co-defendant to identical terms of imprisonment.

*Commonwealth ex rel. Whitling v. Russell*, 406 Pa. 45, 176 A. 2d 641 (1962), provides the standards which control this case.

"If, in the representation of more than one defendant, a conflict of interest arises, the mere existence of such a conflict vitiates the proceedings, even though no *actual* harm results. The potentiality that such harm *may* result, rather than that such harm *did* result, furnishes the appropriate criterion. . . . We cannot say that counsel in the instant case was not effective. But could he not have been more effective and more able to utilize the evidence if he had not been burdened by the chore of defending two defendants whose positions were inconsistent and at variance? Of necessity, counsel in the instant case had to temper his strategy and tactics to a middle-of-the-road position. From the time of his appointment as counsel for both defendants a conflict of interest arose and the existence of such a conflict alone would justify judicial correction of the situation. . . . The very purpose of the rule which prohibits an attorney from representing conflicting interests is to preclude such an attorney from putting himself in a position where he may be required to choose between conflicting duties or to be led to an attempt to reconcile conflicting interests rather than to enforce, to their full extent, the rights of the party whom he should alone represent." At 48-49.

In applying this rule, our courts have not proscribed dual representation in all instances. "To make the dual representation rise to a true conflict, appellant need not show that actual harm resulted, for that would vitiate Whitling but he must at least show the possibility of harm, e.g., that he had a defense inconsistent with that advanced by the other client, or that counsel neglected his case in order to give the other client a more spirited defense." *Commonwealth v. Wilson*, 429 Pa. 458, 463, 240 A. 2d 498 (1968). See also *Commonwealth v. Resinger*, 432 Pa. 398, 248 A. 2d 55 (1968).

Moreover, the cases indicate that the proscribed conflict of interest does not only encompass pre-sentence proceedings, but extends, as well, to conflicts present at the time of sentencing. Thus, in *Wilson,* the court also stated that "(w)e think it clear that if appellant's trial counsel had indeed so compromised appellant's position in order to secure a lighter sentence for another client, this would be an obvious conflict of interest, requiring the grant of a new trial." Similarly in *Commonwealth v. Robertson,* 211 Pa. Superior Ct. 79, 234 A. 2d 61 (1967) this Court stated "No doubt counsel honestly believed that the older and more experienced Robertson had led the younger man into the crime. There is reason to fear, however, that counsel's efforts on behalf of Anthony may have been at petitioner's expense. It is quite possible that in seeking to save Anthony counsel may have failed adequately to protect petitioner's rights. Had he not been so concerned to exonerate Anthony, he might have hesitated before expressing his view as to the relationship between the two defendants." At 81.

In this light, it is evident that throughout these proceedings, the Defender representing both appellant and his co-defendant labored under a conflict of interest.

Initially, he agreed to represent two co-defendants: appellant who alleged his innocence and his co-defendant who had implicated him. At this point, there was an actual conflict of interest.

It makes no difference under *Whitling,* and its progeny that eventually both defendants pled guilty to the same charges. *Whitling* proscribes any conflict which raises the mere potential of harm. At the completion of his interviews on April 3, 1951, the Defender knew that he was representing clients with inconsistent defenses. At that point, he should have withdrawn from one case to avoid the possibility that

he would be forced to compromise his defense of one co-defendant to the advantage of the other or that appellant would be forced to conform his story to that given by his co-defendant.

Moreover, even after identical pleas of guilty had been entered, the Defender still was faced with a conflict. The information which was available to him suggested that for sentencing purposes independent counsel could have stressed that appellant was an ignorant follower of his co-defendant who was the aggressive initiator of their criminal enterprise. Thus, the Court might have considered giving a more lenient sentence to appellant. Due to his dual representation, however, the Defender was unable to vigorously pursue this tack either in argument, in interrogating the co-defendants in court, or by introducing collateral proof of their disparate records and involvements, without compromising appellant's co-defendant.[1] This case, therefore, is different from those instances where counsel who represents two co-defendants is not faced with rival contentions that one co-defendant is more to blame than the other.

Appellant has not waived his right to raise these questions on this appeal. He was never informed that he had a right to substitute counsel in the event of a conflict and since he was indigent he could not on his own dismiss the Defender because that would leave him without *any* legal representation.

I would reverse the judgment of sentence below and order a new trial.

SPAULDING and CERCONE, JJ., join in this dissenting opinion.

---

[1] Had counsel pursued this point, however, appellant's co-defendant would have been prejudiced. This cogently indicates the difficulties likely to result from dual representation. While appropriate in some circumstances, it is a delicate device that should be employed only after a thorough investigation and consideration of all conceivable ramifications.