Commonwealth *v.* Werner, Appellant.

Argued March 17, 1970. Before WRIGHT, P. J., WAT-KINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*John W. Packel,* Assistant Defender, with him
*Thomas Watkins,* and *Melvin Dildine,* Assistant De-
fenders, and *Vincent Ziccardi,* Acting Defender, for ap-
pellant.

*James D. Crawford,* Deputy District Attorney, with
him *J. Bruce McKissock,* Assistant District Attorney,
*Richard A. Sprague,* First Assistant District Attorney,
and *Arlen Specter,* District Attorney, for Common-
wealth, appellee.

OPINION BY HOFFMAN, J., June 12, 1970:

Appellant was convicted by a jury of burglary and
possession of burglary tools. Appellant's counsel also
represented two others, both of whom were charged
with the same offenses arising out of the same incident.
They pleaded guilty before the time of appellant's trial.

Before appellant's trial began, the following appears
of record:

"[The district attorney] : Your honor, [defense coun-
sel] has indicated by his request for a bring down for
the two co-defendants in this case that he is going to
elicit their testimony in behalf of the defendant ap-
parently to exonerate him of the charge. [Defense
counsel] also indicated he represented those two de-
fendants when they pleaded guilty on a prior occasion.
That raises in my mind, in view of the cases of Com-
monwealth ex rel. Whitling versus Russell, 406 Pa. 45
[176 A. 2d 641 (1962),] and also Commonwealth ex
rel. Gass versus Maroney, 208 Pa. Superior Ct. 172,
[220 A. 2d 405 (1966),] a problem of a conflict of in-
terest in the sense that the apparent situation would
be, particularly in view of the guilty pleas, your Honor,

and perhaps also in regard to this case, that [defense counsel] had advised the two men to plead guilty and then to testify in behalf of this defendant, which in my mind, particularly in light of the Gass case would give rise to a colorable claim of conflict of interest, particularly with regard to the two persons who pleaded guilty. . . .

"[Defense counsel] : Your Honor, at that trial nothing was said concerning the third person, [appellant]. I am glad that the Assistant District Attorney has brought to the attention of the court this possibility of a conflict of interest. We reviewed this yesterday, and I do not see where there would be conflict. It would be a conflict if it were the reverse: If the witnesses were to try to implicate this third person. [The district attorney] : No, if they were called by me to implicate him, there would be no conflict. The question here is one of counsel's playing off two defendants in favor of the third. Particularly with regard to the guilty pleas, these men in a post conviction proceeding—THE COURT: I think that you are on very thin ice, [defense counsel]. You represented two men who pleaded guilty and who have been sentenced to jail. There is a question of when they are to be released on probation. Now they come in and testify—[The district attorney] : Exonerating apparently this man. It runs the risk of vitiating two valid guilty pleas. . . .

"[The district attorney] : They pleaded guilty on December 18, 1968. I have raised with [defense counsel] the problem that if those persons, codefendants, were to testify in your behalf, it would seem to me that it would raise the problem of a conflict of interest among defendants as to defense counsel. [Defense counsel] has indicated that the problem will not arise because he does not plan to call those two persons as witnesses in this case. He has further indicated that he does not believe, as I understand it, that their testi-

mony would be helpful to you. Therefore, there would be no reason for him to call those persons as witnesses. We want this all put on the record at this juncture before we swear in the jury and proceed with the trial so that you understand the situation. Is that clear? [Defense counsel] : Let me say this, your Honor, before [appellant] is asked to comment on that. I think the record will reflect that I said I will not call [the co-defendants] to testify in this matter. I did not state whether the testimony would be helpful or damaging. I just said I would not use them. I would not call them, because there is a threat of a possible conflict of interest, and we certainly do not want to jeopardize this particular proceeding at this juncture. I think [appellant] realizes this. I think the Assistant District Attorney can continue if he wants to. I have advised [appellant] of this. He know about it. He also knows that there would be a conflict."

The concern expressed by a very able district attorney, however, did not move the court to appoint new counsel. Counsel who represented the two codefendants represented appellant. During the course of the trial, he did not call the codefendants to testify, despite their apparent ability to exculpate appellant. The first question this case presents, therefore, is whether, under the circumstances, representation by counsel who represented two codefendants created a conflict of interest.

With respect to this question, our judgment should be guided by the oft-cited case of *Commonwealth ex rel. Whitling v. Russell,* 406 Pa. 45, 176 A. 2d 641 (1962). *Whitling* requires reversal if a "potentiality of harm" is shown in counsel's representation of a client in addition to appellant. "If, in the representation of more than one defendant, a conflict of interest arises, the mere existence of such a conflict vitiates the proceedings, even though no *actual* harm results. The poten-

tiality that such harm *may* result rather than that such harm *did* result furnishes the appropriate criterion." Id. at 48, 176 A. 2d at 643 [original emphasis].[1]

Where one counsel represents two codefendants, whose pleas differ, there is a grave potential of harm. See *Commonwealth v. Bostick,* 215 Pa. Superior Ct. 488, 258 A. 2d 872 (1969); *Commonwealth v. White,* 214 Pa. Superior Ct. 264, 252 A. 2d 204 (1969); cf. *Commonwealth v. Burns,* 215 Pa. Superior Ct. 333, 257 A. 2d 74 (1969). See also *Commonwealth v. Brown,* 216 Pa. Superior Ct. 800, 261 A. 2d 888 (1970) [confession of error by the district attorney]. As the district attorney recognized, those codefendants who plead guilty are in jeopardy if counsel also advises a codefendant to plead not guilty. As we said in *Bostick,* "[w]e will never know whether counsel would have advised a guilty plea had he only represented appellant. We cannot burrow into his mind to determine what he was thinking, whether he was intent on effectuating appellant's interest, or intent on effectuating those of his other client." Hence, at some later date, following conviction, the codefendants who pleaded guilty may file post-conviction petitions, alleging ineffective assistance of counsel because their counsel labored under a conflict.[2]

In contrast to the codefendant who pleads guilty, the codefendant who pleads not guilty does not by the disparate plea alone indicate that a potential for harm existed. However, there are situations where additional factors may indicate that such a potential did, in fact, exist. One such additional factor is apparent

---

[1] "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *Glasser v. United States,* 315 U.S. 60, 76, 62 S. Ct. 457, 467 (1942).

[2] The district attorney unsuccessfully attempted to explain this predicament to appellant's counsel.

here. The record reveals that the codefendants may have been able, and perhaps willing, to exonerate appellant. Their failure to do so may have been prompted by counsel's fear of a conflict against their interests. They could, thereafter, claim counsel advised them to plead guilty in order to benefit his other client. Indicative of that concern, they could allege, was his advice that they testify and exonerate his other client. This Court cannot ascertain what counsel's motives may have been. It is the possibility that he may have been influenced by the dual representation that is crucial.

Having concluded that a conflict of interest did exist, we next face the question whether appellant waived his right to have counsel unburdened by a conflict of interest.

The testimony, in this regard, is as follows: "THE COURT [to appellant]: [Defense counsel] is now representing you. Would you state for the record how you came to engage [defense counsel]? He was not appointed by the court, was he? . . . [Appellant]: First, I had no money. I do know [defense counsel]. I also know slightly the other member of the Bar who is in the office with him. I felt that he could well represent me. I felt that I could pay him in the future. THE COURT: Are you satisfied with his representation up to now? [Appellant]: Very well. THE COURT: It is your desire that he continue to represent you? [Appellant]: It is my sincerest desire that he represent me. However, on this other matter, will there be any reference to the other two defendants by either the defense or the prosecution? THE COURT: Possibly. [Defense counsel]: Naturally, their names will come up. THE COURT: Their names will come up. [Appellant]: Suppose it would be some situation—of course, no one knows how a trial will go. Some situation would arise where it would be absolutely necessary in order for me

to clear myself to have them take the witness stand. If such a situation would arise, I would be in pretty much of quandary. . . .

"[The district attorney]: May I point out, your Honor, that we had this proceeding now in order to have [appellant] state that he is satisfied with the representation by [defense counsel]. He said he is well satisfied. On the other hand, he has said he is not satisfied with the prospect of proceeding without the testimony of [the two accomplices]. [Defense counsel]: He did not say that at all. I think he has just left the door open. [The district attorney]: Yes, he left everything hanging and it is right where it began. [Appellant]: I will put it this way. Since I have the utmost confidence in [defense counsel], I will rely on his judgment. [Defense counsel]: No fairer comment could be made by a defendant. [The district attorney]: All I can say is that I am concerned."

The right to counsel, of course, is a fundamental right. *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792 (1963). Certainly that right requires that counsel be effective. *Reece v. Georgia*, 350 U.S. 85, 90, 76 S. Ct. 167, 170-171 (1955); *Glasser v. United States*, 315 U.S. 60, 69-70, 62 S. Ct. 457, 464-465 (1942); *Avery v. Alabama*, 308 U.S. 444, 446, 60 S. Ct. 321, 322 (1940); *Powell v. Alabama*, 287 U.S. 45, 57, 53 S. Ct. 55, 59-60 (1932). "To preserve the protection of the Bill of Rights [particularly, the right to counsel] for hard-pressed defendants, we [i.e., courts] indulge every reasonable presumption against the waiver of fundamental rights." *Glasser v. United States*, supra at 70, 62 S. Ct. at 465. See *Johnson v. Zerbst*, 304 U.S. 458, 462-464, 58 S. Ct. 1019, 1022-1023 (1938). We must examine the above testimony, therefore, to determine if appellant waived his right to counsel competently and intelligently.

To waive a right intelligently, one must be aware of the considerations that make it a wise or unwise choice.

"[B]efore a lawyer may represent multiple clients, he should explain fully to each client the implications of the common representation and should accept or continue employment only if the clients consent." A.B.A. Code of Professional Responsibility, Canon EC 5-16 (1969). The trial court, however, should not rely upon counsel's explanation alone. "While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record." *Johnson v. Zerbst*, supra at 465, 58 S. Ct. at 1023. "The judge's responsibility is not necessarily discharged by simply accepting the co-defendants' designation of a single attorney to represent them both. An individual defendant is rarely sophisticated enough to evaluate the potential conflicts, and when two defendants appear with a single attorney it cannot be determined, absent inquiry by the trial judge, whether the attorney has made such an appraisal or has advised his clients of the risks." *Campbell v. United States*, 352 F. 2d 359, 360 (D.C. Cir. 1965).[3] See *Morgan v. United States*, 396 F. 2d 110, 114 (2d Cir. 1968). See also *Wynn v. United States*, 275 F. 2d 648, 649 (D.C. Cir. 1960).[4]

In order for an accused to intelligently evaluate his predicament, he should know what a lawyer representing him alone could do. He should know what a lawyer who represents another codefendant may be hindered from doing. The court should tell the accused that if. he cannot afford to hire another lawyer, then

---

[3] The *Campbell* panel consisted of Judges WASHINGTON, BURGER (now THE CHIEF JUSTICE), and WRIGHT.

[4] The Commonwealth suggests that a different rule should govern when an accused retains his own counsel. An accused who retains his own counsel may be more affluent than other accused but, by no means, more cognizant of possible harm due to conflict of interest.

he will be represented by a court-appointed attorney. "Certainly, whatever risks and disabilities inhere in joint representation inhere whether counsel is appointed or retained; and whatever steps a defendant is entitled to take to avoid such problems should be made known to him whatever his economic situation may be." *Lollar v. United States*, 376 F. 2d 243, 246 (D.C. Cir. 1967).

We are convinced that appellant could not intelligently evaluate whether to waive counsel. The colloquy does not indicate that he was aware of the considerations that underlay his choice. Appellant stated he would be in a "quandary" should he need to call his codefendants. He "left the door open" as to whether he was satisfied with proceeding without their testimony. Finally, he abandoned any decision and said he would rely on his counsel's "judgment." This does not indicate any choice, let alone an informed choice. Appellant could not rely on the "judgment" of his counsel without himself participating in that informed decision. See, e.g., *Commonwealth v. Baity*, 428 Pa. 306, 310 n. 3, 237 A. 2d 172, 174-175 n. 3 (1968); *Commonwealth v. Garrett*, 425 Pa. 594, 599-601, 229 A. 2d 922, 925-927 (1967); *Fay v. Noia*, 372 U.S. 391, 439, 83 S. Ct. 822, 849 (1963).

Apparently, too, appellant was concerned that he could not afford to employ counsel. He knew trial counsel and intended to "pay him in the future." It may indeed have been the case that appellant was reluctant to attempt to search anew for counsel. The court did not inform him that should he wish to change counsel and should he be unable to afford to hire another, he would have counsel appointed to represent him.

In short, the record is ambiguous and contradictory. The colloquy of the court is insufficient to establish a competent and intelligent waiver. Since we cannot tell

what choice appellant would have made had he been informed and since a potential of harm existed from the dual representation, we conclude that error was committed below.

Judgment of sentence is vacated and a new trial is granted.