Commonwealth *v.* Booker, Appellant.

Submitted March 17, 1971.   Before WRIGHT, P. J.,
WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING,
and CERCONE, JJ.

*Joseph M. Casey* and *John W. Packel,* Assistant Defenders, and *Vincent J. Ziccardi,* Defender, for appellant.

*Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., June 22, 1971:

Appellant and a co-defendant, Steve Miller, were charged with aggravated robbery. The charge arose from the alleged theft of a transistor radio on March 8, 1969. Each pleaded not guilty and waived a jury trial; they were to be tried jointly.

The joint trial started on October 1, 1969, with both defendants represented by the same counsel. The second Commonwealth witness was Officer Bailey, one of the arresting officers, who observed the incident leading to the arrest. In response to a question by the district attorney on direct examination, Officer Bailey stated: "At this particular time Miller threw the radio in Booker's direction and Booker stated, 'He took it, I didn't.'" Joint counsel for appellant and his co-defendant promptly objected and moved for a mistrial. The trial judge refused the motion for a mistrial, observing that this remark was not a cause for mistrial as to Booker. The judge did allow a severance as to

Miller and stated he would be tried immediately after the Booker trial was concluded. The trial as to Booker then continued.

Cross-examination of Officer Bailey disclosed that it was Miller, not Booker, who made the statement: "He took it, I didn't." An extensive examination by the court further confirmed that it was Miller who made the statement. Near the end of the trial, after Booker had testified in his own behalf, counsel requested that Miller be called to testify; a moment later he changed his mind and did not call Miller. At the conclusion of the trial, Booker was adjudged guilty of aggravated robbery and sentence was deferred.

Two days later, on October 3, 1969, Miller was brought to trial. Before the trial began, counsel attempted to withdraw as Miller's counsel because he believed that representing both Booker and Miller would constitute a conflict of interest in view of all the facts surrounding the cases; the judge refused this request. The judge did insist on a jury trial for Miller.

During Miller's trial, counsel called Booker to testify for the defense. The trial judge sent for another attorney to represent Booker and warned Booker of his constitutional right against self-incrimination; Booker, thereupon, decided not to testify. On October 7, 1969, the jury found Miller guilty of aggravated robbery.

Appellant filed post-trial motions which were denied.[1] One of the claims in the post-trial motions, and the only one raised in this appeal, was that he was denied effective representation of counsel because of a conflict of interest. The lower court held that the record did not indicate that counsel was involved in a conflict of interest between clients and at no time during Booker's trial did counsel indicate for the record that he felt a conflict existed. Thus the court conclud-

---

[1] Miller was granted a new trial on other grounds.

ed that, even if there was a conflict, the right to raise it was waived. We reverse.

The law governing conflict-of-interest cases is contained in the case of *Commonwealth ex rel. Whitling v. Russell,* 406 Pa. 45, 48, 176 A. 2d 641, 643 (1962). There the Court stated: "If, in the representation of more than one defendant, a conflict of interest arises, the mere existence of such a conflict vitiates the proceedings, even though no *actual* harm results. The potentiality that such harm *may* result, rather than that such harm *did* result, furnishes the appropriate criterion." Before the rule of potential harm comes into effect, the appellant must show that a *conflict in fact* existed at trial. *Commonwealth v. Wilson,* 429 Pa. 458, 463, 240 A. 2d 498, 501 (1968). Dual representation alone does not constitute a conflict of interest. *Id.*

In the instant case appellant has shown a conflict of interest. As soon as the police officer testified that one defendant tried to blame the theft on the other defendant, it became obvious that the defendants had antagonistic defenses. It became impossible for counsel to represent both defendants fully and faithfully. Under the rule of *Whitling,* supra, the conviction of appellant cannot stand. The conflict was not cured by granting a severance because the dual representation continued throughout the trial.

The lower court held that even if a conflict of interest was present, it was waived by failure to raise the claim at the time of trial. The issue of how a conflict of interest can be waived was recently considered by this Court in *Commonwealth v. Werner,* 217 Pa. Superior Ct. 49, 268 A. 2d 195 (1970). A lengthy excerpt from that case is necessary to fully set out the present waiver rule:

"To waive a right intelligently, one must be aware of the considerations that make it a wise or unwise

choice. '[B]efore a lawyer may represent multiple clients, he should explain fully to each client the implications of the common representation and should accept or continue employment only if the clients consent.' . . . The trial court, however, should not rely upon counsel's explanation alone. 'While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record.' . . . 'The *judge's responsibility is not necessarily discharged by simply accepting the co-defendants' designation of a single attorney to represent them both.* An individual defendant is rarely sophisticated enough to evaluate the potential conflicts, and when two defendants appear with a single attorney it cannot be determined, absent inquiry by the trial judge, whether the attorney has made such an appraisal or has advised his clients of the risks.' . . .

"In order for an accused to intelligently evaluate his predicament, he should know what a lawyer representing him alone could do. He should know what a lawyer who represents another codefendant may be hindered from doing. The court should tell the accused that if he cannot afford to hire another lawyer, then he will be represented by a court-appointed attorney." (Emphasis added.) *Id.* at 56-58, 268 A. 2d at 198-199.

Here the record discloses that at no time was appellant made aware of any potential conflict; nor does it disclose whether his attorney apprised him of all the risks involved in dual representation. He was never told what a lawyer representing him alone could do to promote his cause. If the need for such information was not evident at the beginning of the trial, it certainly was necessary when it became apparent that their defenses might consist of placing the blame on

the other. Since appellant was not aware of the considerations involved, it cannot be said that he waived his right to raise the conflict of interest claim.

Judgment of sentence is vacated and a new trial granted.