385 A.2d 452

**COMMONWEALTH of Pennsylvania**

v.

**Paul PETTIFORD, Appellant.**

**COMMONWEALTH of Pennsylvania**

v.

**Ronald James HOOVEN, Appellant.**

Superior Court of Pennsylvania.

Argued March 15, 1977.

Decided April 13, 1978.

504

William C. Costopoulos, Lemoyne, with him Kollas & Costopoulos, Lemoyne, for appellant, at No. 136.

Arthur L. Goldberg, Harrisburg, with him Harry B. Goldberg, Harrisburg, for appellant, at No. 130.

Marion E. MacIntyre, Second Assistant District Attorney, Harrisburg, with her LeRoy S. Zimmerman, District Attorney, Harrisburg, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

Appellants Paul Pettiford and Ronald J. Hooven were passing through Steelton on September 24, 1975, Mr. Pettiford driving his red Toyota with Mr. Hooven in the passenger seat, when the two men were stopped by a Steelton police officer, Robert E. McCaleb. The Pettiford car was traveling 40 miles per hour in a 25 mile an hour zone during a very heavy rain, and Officer McCaleb stopped the Toyota to issue a citation to the driver. While the police officer was sitting in his patrol car writing the citation, Hooven entered the back seat of the patrol car and began to verbally harass Officer McCaleb. Hooven left the patrol and returned twice. The final time, Officer McCaleb got out of the car, told Hooven he was under arrest and ordered him to get into the back of the police car. When Hooven resisted, the police officer attempted to put handcuffs on him. A pitched battle resulted, with Pettiford joining in to help his companion. The three men thrashed around in the pouring rain for 15 to 20 minutes, with McCaleb trying to put the handcuffs on Hooven. Pettiford literally had his shirt torn off and Hooven nearly lost his pants. Pettiford received several scalp wounds and Hooven a bruised eye; Officer McCaleb received numerous abrasions on his head. Additional police help finally arrived, and Hooven and Pettiford were handcuffed and taken away with little further resistance. Officer McCaleb later went to a hospital where he received 25 stitches for his head wounds and stayed overnight for observation. As a result of the incident, the officer suffered a hearing impairment.

Appellant Pettiford was charged with aggravated assault, hindering apprehension, and speeding. Appellant Hooven

was charged with aggravated assault, resisting arrest, and disorderly conduct. The two men were tried together before a jury on February 3–5, 1976, with the same attorney representing both men. Both defendants were found guilty and on April 22, 1976, were sentenced to pay $10 fines and serve 1½ to 4 years imprisonment. Appeal was taken to our Court from the judgment of sentence.

Appellant Pettiford argues that the trial court erred in refusing to admit testimony concerning the reputation of police officer McCaleb, which testimony, it is argued, would have corroborated appellant's contention that the police officer was the aggressor in the fracas. The basis for the trial court's refusal to allow the testimony into evidence was the fact that neither defendant was aware of the police officer's reputation. In *Commonwealth v. Amos*, 445 Pa. 297, 284 A.2d 748 (1971), our Supreme Court stated:

"Appellant submits that the victim's record is admissible on either or both of two grounds: (1) to corroborate defendant's alleged knowledge of the victim's quarrelsome and violent character in an effort to show that defendant reasonably believed that his life was in danger; (2) to prove the allegedly violent propensities of the victim to show that the victim was in fact the aggressor. This Court has recognized this first ground at least since *Abernethy v. Commonwealth*, 101 Pa. 322, 329 (1882). In *Abernethy*, we said (at page 329) that evidence that the victim was a man of quarrelsome disposition was admissible to show that the defendant believed himself to be in danger when it had been shown that 'the defendant and the deceased were on terms of intimacy.' And this Court has recognized the second ground at least since *Alexander v. Commonwealth*, 105 Pa. 1, 9 (1884). There, evidence of the deceased's propensity for hostility, vindictiveness and violence was held admissible on the issue of whether or not the victim was the aggressor. The Court imposed no requirement that defendant have had knowledge of the alleged propensity." 445 Pa. at 302, 284 A.2d 748, 750.

*Amos* supports appellant Pettiford's argument that there is no requirement that the defendant have knowledge of the victim's reputation for violence and aggressiveness. We find, however, that appellant failed to properly preserve this issue for review.

■ Appellant's attorney called to the stand a witness, John Albert Poligone, who testified to appellant Pettiford's good reputation in the community. The following then occurred:

"Q  Mr. Poligone, how long have you been a resident in this area?

A  Twenty-five years.

Q  How long have you been a resident of Highspire?

A  Six months.

Q  Now have you had occasion to know Officer McCaleb?

A  Not personally but I know him through different instances that I have run into. I attended—like I spend most of my time in Steelton—

MR. DISSINGER: Your Honor, I am going to object to this going any further. I am going to object to the questioning, especially the follow-up.

THE COURT: Yes, I find the line of inquiry inadmissible. Objection sustained.

MR. TARMAN: It is laying a foundation for the reputation of the officer.

MR. DISSINGER: That's what I would object to.

THE COURT: I don't think you can go into that, Mr. Tarman.

MR. TARMAN: Thank you very much, Mr. Poligone."

Later in the trial, the following occurred at side bar:

THE COURT: I would like the record to show that earlier in the trial the defense offered Mr. Poligone for the purpose of going into the purported or alleged reputation of Officer McCaleb, although we did not get very far into that question. An objection was sustained and the

matter was not pursued because the jury was in the box. I have conferred with counsel and explained that the reason that the objection was sustained was because no foundation was established to show that either Mr. Hooven or Mr. Pettiford had knowledge of whatever the reputation was that the defense was wanting to produce. I have discussed this with Mr. Tarman and after hearing Mr. Hooven's and Mr. Pettiford's testimony I'm satisfied that neither of them knew the officer or knew anything about him. Therefore while I would permit the evidence that was offered if they did know about him, since it is admitted that they did not know him or anything about any reputation such evidence is not admissible. Would that be a fair statement?

MR. TARMAN: I think that would be a fair statement."

Nowhere in the record does it appear that appellants' attorney was attempting to introduce testimony to establish the police officer's propensity for hostility, vindictiveness, or violence in order to show that the police officer was the aggressor. It is possible that defense counsel was attempting to show the police officer's reputation for some other type of behavior (which might be irrelevant to the issue of who was the aggressor), or that defense counsel was initially actually attempting to prove that the defendants were acting out of fear because of their knowledge of the police officer's character (the first ground considered by the Supreme Court in *Amos*). Counsel's failure to clarify his argument precludes us from deciding this issue on the merits. See *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974).

■■ Pettiford next argues that a conflict of interest existed at trial because the same attorney represented both Hooven and himself, when the two defendants had independent and potentially conflicting defenses. Although our Supreme Court in *Commonwealth ex rel. Whitling v. Russell,* 406 Pa. 45, 176 A.2d 641 (1962) held that the existence of a conflict of interest would vitiate the proceedings even in

the absence of a showing of actual harm, the court made it clear in *Commonwealth v. Wilson,* 429 Pa. 458, 463, 240 A.2d 498 (1968) that the burden would be on the appellant to demonstrate that a conflict in fact existed at trial. Such a conflict may be established if a defendant can show that he had a substantial defense, not raised at trial, inconsistent with that of the co-defendant, or if he can show that counsel neglected his case in order to concentrate on that of the co-defendant. *Commonwealth v. Cox,* 441 Pa. 64, 69, 270 A.2d 207 (1970). Appellant's argument regarding the alleged conflict is summarized in his brief:

> "[T]he one defendant, and the appellant in the instant case, Mr. Pettiford, had to justify the conduct of his companion to justify his own conduct, when the probability was that the conduct of his companion was unjustified, and the conduct of Mr. Pettiford was a mistake of fact. The attorney for Mr. Pettiford could not assert that the conduct of Mr. Pettiford was a mistake of fact without 'selling out' the companion whom he also represented. As a result of this, Mr. Pettiford's defense was not stressed and was compromised."

We do not find this to be a sufficient allegation of conflict of interest since, regardless of whether Hooven's conduct was justified or not, Pettiford could have attempted to prove that he was acting under some type of "mistake of fact."

Appellant Pettiford further contends that the dual representation and alleged conflict constituted ineffective assistance of counsel. The test of effective assistance of counsel is whether counsel's actions are reasonably calculated to effectuate the client's interests. *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967). When (as in the case before us) there is an allegation by one defendant of a conflict of interest, *Washington* requires that counsel's actions on behalf of that defendant would have been sufficient under this (*Washington*) test even had there been no dual representation. *Wilson,* 429 Pa. at 464, 240 A.2d 498. Having found no basis for Pettiford's allegation of potentially conflicting defenses, we are not inclined to

hold that dual representation alone will constitute ineffective assistance of counsel. See *Commonwealth v. Booker,* 219 Pa.Super. 91, 280 A.2d 561 (1971). We find that appellant Pettiford was effectively represented by counsel.

■ Appellant Hooven also argues on appeal that trial counsel was ineffective for representing both himself and Pettiford. As we have just held in considering appellant Pettiford's argument, dual representation alone will not constitute ineffective assistance of counsel. Trial counsel pursued a line of defense which he obviously thought had the best chance of success: proving that the police officer was the aggressor. If successful, this approach would have worked to the advantage of *both* defendants. We can not say that counsel's strategy had "no reasonable basis." *Commonwealth v. Heard,* 224 Pa.Super. 216, 218, 303 A.2d 831 (1973).

■ Hooven further argues that counsel was ineffective for failing to file post-trial motions on his behalf, while filing them on behalf of co-defendant Pettiford. Appellants were fully advised at the conclusion of trial of the necessity of filing post-trial motions within seven days, and of the consequences of failing to file such motions. Appellant Hooven does not now contend that he requested that counsel file such motions on his behalf, or even that he now has any issues which he would like to litigate. In the absence of any allegation of possible meritorious issues that counsel could have raised but failed to raise, we will not find counsel ineffective.

Judgments of sentence affirmed.

SPAETH, J., files concurring and dissenting Opinion in which HOFFMAN, J., joins.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

SPAETH, Judge, dissenting and concurring:

With respect to Pettiford's appeal: I dissent. It is true, as the majority says, that "Pettiford *could* have attempted

to prove that he was acting under some type of 'mistake of fact' ". (At 510, emphasis added.) This observation, however, does not respond to the argument that for Pettiford's counsel to have made this attempt would have been, or at least might very well have been, inconsistent with his defense of Hooven. To argue that Pettiford was "mistaken" would have been to argue that Hooven had acted improperly, i. e., that Pettiford *thought* Hooven was acting properly, but he was wrong. Therefore, I should reverse and order a new trial for Pettiford.

With respect to Hooven's appeal: I concur in the result reached by the majority. Hooven had one good argument—that it was error to exclude proof of the police officer's reputation for violence, because it was relevant to the issue of who started the fight—but counsel never made that argument for admissibility below, so we cannot examine it here.

HOFFMAN, J., joins in this opinion.