UNITED STATES of America ex rel.
Peter VRINER, Petitioner,

v.

Everett HEDRICK, Sheriff of Champaign
County, and William J. Scott, Attorney
General of Illinois, Respondents.

No. 79–2180.

United States District Court,
C. D. Illinois.

Feb. 4, 1980.

Julius L. Echeles, Chicago, Ill., for petitioner.

William J. Scott, Atty. Gen., William M. Wippold, Asst. Atty. Gen., Chicago, Ill., Thomas J. Difanis, State's Atty., Urbana, Ill., for respondents.

## ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

BAKER, District Judge.

A jury convicted the petitioner in the Circuit Court of Champaign County, Illinois of unlawful use of weapons and of armed violence. His conviction was affirmed by the Illinois Appellate Court, 53 Ill.App.3d 1105, 15 Ill.Dec. 30, 373 N.E.2d 124 (1977), and by the Illinois Supreme Court, 74 Ill.2d 329, 24 Ill.Dec. 530, 385 N.E.2d 671 (1978). The United States Supreme Court denied

certiorari. 442 U.S. 929, 99 S.Ct. 2858, 61 L.Ed.2d 296 (1979).

The petitioner now seeks a writ of habeas corpus. At trial, the same lawyer represented both the petitioner, Peter, and his brother, William. The State had indicted William separately and then successfully moved to consolidate his case with Peter's. Because witnesses gave conflicting identifications of each brother as the sole perpetrator of the crimes, the petitioner contends that he and his brother had antagonistic defenses. He argues that these antagonistic defenses created a conflict of interest for the attorney and that this conflict deprived the petitioner of his sixth amendment rights to the effective assistance of counsel.

The facts surrounding the occurrence for which the petitioner was convicted are contained in the decision of the Illinois Supreme Court.

At approximately 8:30 p.m., on May 4, 1976, Michael Rea was preparing to drive his car out of the parking lot of a grocery market in Champaign. As he waited for traffic to clear so that he could exit, a green Chevrolet started into the lot, but came to a screeching halt several feet from the side of Rea's car. In the front seat of that car were the driver and two passengers. The passenger on the right and driver both exchanged words with Rea. A witness, Lenford Russell, was standing approximately 35 feet from the Chevrolet during the occurrence. Russell testified that the passenger got out of the Chevrolet, picked up a stick, and while cursing Rea, hit Rea's car with the stick. According to Rea, however, the passenger did not hit Rea's car with the stick, but merely approached to within a few feet of the car. Rea opened his car door but did not get out.

The evidence showed that the driver of the Chevrolet then got out, approached Rea's car while holding a gun at his side, and told Rea in strong language that he had better leave. Rea closed his car door and pulled out into the street. As he did so, the driver of the Chevrolet fired the gun at the ground a few feet behind Rea's car. The driver and passenger got back into the Chevrolet and left the scene.

After traveling a short distance, Rea returned to the parking lot. Finding that the Chevrolet was gone, he went to a service station and asked the attendant to call the police. Thereafter, Rea and Russell related the incident to the police.

That same evening, between 9:15 and 9:30 p.m., the Champaign police apprehended Peter Vriner, his brother William, and Stanley Vinson at a service station in Champaign. Vinson had arrived at the service station alone in one car, and the Vriners arrived a few minutes later in a green Chevrolet. The police recovered a gun from beneath the car of John Ruedi, a witness who was at the service station. Ruedi testified that Peter Vriner had thrown the gun beneath Ruedi's car as the police were arriving. The gun matched the description of the gun used earlier that evening at the parking lot.

Later that evening, the Vriners and Vinson were three of the four people in a police lineup. There Rea identified William Vriner as the driver of the green Chevrolet and Vinson as the passenger who had approached Rea's car. Russell, independently, also identified Vinson as the passenger, but identified Peter Vriner as the driver.

In separate indictments, Peter Vriner was charged with armed violence and unlawful use of weapons, William Vriner was charged with armed violence, and Stanley Vinson was charged with armed violence. William and Peter retained a private attorney to defend them. Another attorney represented Vinson. Upon motions by the State, the court consolidated the cases for trial.

At trial, contrary to his out-of-court identification, Rea testified that Peter Vriner was the driver of the auto. Russell also testified, consistent with his identification at the lineup, that Peter was the driver. Rea and Russell each

adhered at trial to his out–of–court identification of Vinson as the passenger. At the close of the State's case, the court granted a motion for a directed verdict in favor of William Vriner.

In defense Peter Vriner testified that William had driven the car to the market that night and that Peter was the passenger whom the prosecution witnesses had identified as Vinson. William, no longer a defendant, also testified to that effect. Both stated that Vinson was not with them in the car. Another witness testified that he had been the third person in the car and that defendant's version was correct. This defense testimony was partially corroborated by Vinson and his several alibi witnesses, who placed Vinson at his home at the time of the incident at the parking lot.

The jury returned a verdict of guilty against Peter Vriner and Vinson. The court granted Vinson's post–trial motion for judgment n.o.v., thereby leaving Peter Vriner as the only defendant in the case.

74 Ill.2d at 335–37, 24 Ill.Dec. 530, 385 N.E.2d 671.

Given this state of facts, in deciding whether the Vriners' retained attorney labored under a conflict of interest, the Illinois Supreme Court held:

> There is no indication that the attorney was in a position that would cause him to slight the interests of one client in favor of the other....
>
> .... For us now to say that the presentation of the defense in this case demonstrated that an impermissible conflict of interest existed from the outset of the trial would be tantamount to adoption of a *per se* rule which, absent a knowing waiver, would require separate representation of criminal codefendants in every case.

74 Ill.2d at 341–42, 24 Ill.Dec. 530, 385 N.E.2d 671.

The Illinois Supreme Court indicated that, had the Vriners' attorney objected to the consolidation of their cases, this warning to the trial judge of the existence of a conflict might have been sufficient to invoke the rule of *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). *Holloway* holds that, when defense counsel tells the trial judge that a conflict of interest exists in representing codefendants, the trial judge must either determine that a conflict does not exist, or that it is waived, or provide for separate representation of the defendants. Failure to do so is reversible error. Although Vriner contended that his lawyer had objected to the consolidation, no objection is shown in the trial court record. This absence caused the Illinois Supreme Court to conclude:

> Inasmuch as any conflict–based objection to this joinder is not a part of the record before us, we are precluded from applying the Holloway rule to determine that Peter was denied the right to effective assistance of counsel because of a conflict of interests.

74 Ill.2d at 339, 24 Ill.Dec. 530, 385 N.E.2d 671.

The petitioner persists in his assertion that his lawyer objected to the consolidation but that the objection was omitted from the record. This contention receives some support from the record itself, which shows the trial judge referring to a hearing on the motion to consolidate. Transcript at 14. A transcript of the proceedings in that hearing does not appear in the record.

This court conducted an evidentiary hearing under 28 U.S.C. § 2254(d) to determine if the Vriners' attorney had made such an objection and to learn the nature of the professional relationship between defense counsel and his clients. After hearing, the issues in this habeas petition appear to be:

(1) Did a conflict of interest exist sufficient to violate the petitioner's sixth amendment rights?

(2) If the conflict did exist, was it brought to the attention of the trial judge; or, considering the circumstances, should the conflict have been apparent?

(3) If a conflict existed, did the petitioner waive his right to an attorney with undivided loyalty?

## I. *FINDINGS OF FACT*

### *Objection to Consolidation*

The evidence is conflicting about what took place on the morning the cases were called for trial. That Peter's and William's cases were joined, there is no doubt. Whether Peter's lawyer objected is a vacuity in the trial court record. The trial judge testified that he had no recollection of the event but that it was standard procedure to have a motion shown in the verbatim transcript of the proceedings and in the clerk's minutes in the court's docket. He was unable to suggest an explanation as to why neither the transcript nor the minutes made any mention of the motion to consolidate. That some sort of hearing took place is evident from the colloquy between the trial judge and Vinson's lawyer about the court's ruling on the motion to consolidate earlier on the morning of trial. Transcript at 14.

The court reporter's testimony is interesting. He was an experienced reporter. He had no recall of the events beyond what appeared on the face of the transcript. In response to a question whether exchanges between the court and counsel do not always appear in the record, he responded, "Frequently."

The testimony of the defense lawyer and the prosecutor on whether objection was made to the joinder is diametrically opposed. Defense counsel says he did object. The prosecutor says there was no objection.

The record does reflect that in the proceedings on post–trial motions defense counsel reminded the court that he had objected to consolidation. That assertion stands in the record uncontradicted by the trial judge or the prosecutor. Moreover, defense counsel in the brief in the appellate court again asserted that he objected to the consolidation of Peter's and William's cases and that assertion again was not controverted by the state.

Knowing that a ruling on consolidation did occur; taking into consideration the blank in the record concerning the hearing on the motion to consolidate; bearing in mind the court reporter's testimony that dialogue is frequently missed in the record; and considering the failure of the trial judge and the prosecutor to contradict defense counsel's claims in the hearing on post–trial motions that he objected to consolidation and the same failure in the State's brief on appeal, it is more probably true than not true that defense counsel did object to the consolidation. I find, therefore, that defense counsel did object to the consolidation of petitioner's case with that of his brother.

### *Waiver*

In answer to questions concerning his professional relationship with the petitioner, defense counsel said he had been retained by Peter, William, and their father. Defense counsel viewed himself as representing the family. He related that he had discussed with the family the possibility of conflict arising in the interests of Peter and William and that it might be necessary for the brothers to have separate lawyers. Those discussions took place before the cases were consolidated and at a time when separate trials were contemplated. There is no evidence to indicate that any discussions concerning conflict were had after consolidation. In fact, consolidation occurred on the morning of trial. Transcript at 14.

Nothing in the evidence shows that defense counsel, after consolidation for trial, renewed the discussion with Peter and William about conflicting interests and separate lawyers. Nothing shows that the trial judge interrogated Peter about his knowledge and understanding of the perils in being represented by a lawyer serving two masters. There is a total silence in the evidence concerning the petitioner's appreciation of defense counsel's dilemma.

## II. *CONCLUSIONS OF LAW*

1. The Bill of Rights guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense." *U.S. Const.* amend. VI. In a criminal prosecution, the sixth amendment guarantees not

merely the right to assistance, but the right to *effective* assistance, of counsel. *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). One aspect of the right to effective assistance of counsel is the right to a defense counsel whose undivided loyalties lie with his accused client. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Permitting one lawyer to represent codefendants does not, in and of itself, create a conflict of interest. But where a conflict of divided loyalties is revealed to the court, then no material effect on the outcome of the trial need be shown, and, absent a waiver, the prejudiced defendant is entitled to a new trial. *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978).

■ 2. When the same attorney represents codefendants who have antagonistic defenses, such as here where each could claim he had been mistakenly identified as the other, an inherent unconstitutional conflict of interest exists, and specific instances of prejudice need not be shown. *United States ex rel. McClindon v. Warden,* 575 F.2d 108, 114–15 (7th Cir. 1978); *see People v. Ware,* 39 Ill.2d 66, 233 N.E.2d 421 (1968); *Commonwealth v. Brooker,* 219 Pa.Super.Ct. 91, 280 A.2d 561 (1971); *People v. Bentley,* 402 Mich. 121, 261 N.W.2d 716 (1978); *cf. Zurita v. United States,* 410 F.2d 477, 480 (7th Cir. 1969); *United States v. Jeffers,* 520 F.2d 1256, 1264 n.13 (7th Cir. 1975) (acknowledging necessity of automatic grant of new trial in egregious cases of conflict of interest).

■ The evidence is uncontested that both William and the petitioner, Peter, were occupants of the green Chevrolet automobile. At the police lineup the victim identified William as the driver of the Vriner car and the person carrying the gun. The eyewitness identified Peter. Defense counsel testified in this court that he was aware of the conflict in the identification testimony of the prosecution witnesses. He therefore was also aware of his inability to give each his undivided loyalty because of his inability to argue freely who was the driver, William or Peter.

While this conflict might have been alleviated by trying William and Peter separately, *see Case v. North Carolina,* 315 F.2d 743 (4th Cir. 1963); *People v. Walsh,* 28 Ill.2d 405, 410, 192 N.E.2d 843 (1963), it was rendered unbearable by the consolidation of the cases.

■ 3. When an inherent conflict of interest is present, a court does not need to find in the record specific instances of conflict to establish a violation of the accused's constitutional rights. In such a case, the prejudice of the conflict lies not in what counsel does but in what he holds back from doing. In *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) the court observed:

> [I]n a case of joint representation of conflicting interests the evil–it bears repeating–is in what the advocate finds himself compelled to refrain from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process. It may be possible in some cases to identify from the record the prejudice resulting from an attorney's failure to undertake certain trial tasks, but even with a record of the sentencing hearing available it would be difficult to judge intelligently the impact of a conflict on the attorney's representation of a client. And to assess the impact of a conflict of interests on the attorney's options, tactics, and decisions in plea negotiations would be virtually impossible.

*Id.* at 490–91, 98 S.Ct. at 1181–82.

■ 4. Nevertheless, in this case, specific instances of prejudice to the petitioner are apparent from the record. In the opening statement, defense counsel did not tell the jury that there was a conflict in the identification made by the eyewitness and the victim.

> Ladies and gentlemen of the jury, I don't believe much in saying much in opening statements quite frankly, because I prefer to let the witnesses tell you and unfold the story to you. And I think you're going to be surprised. And you have to wait until the end of the story or mystery

is over with. And you have promised me that you will not make up your minds until you hear all the evidence, and you will listen carefully to the evidence and not make up you mind until its all over with. Thank you.

Transcript at 26–27. This failure opened the way for the prosecution to charge recent fabrication when William, after his acquittal, testified that he had fired the gun. Defense counsel was trapped at opening statement by the conflicting interests of his clients. What was a gain for one was a loss for the other.

In the cross-examination of the victim and the eyewitness, defense counsel was not aggressive in his questioning and did not press about the possibility of a mix-up by the two witnesses in their identifications. Again, if he had, what he would have gained for one client would have been lost by the other. Transcript at 46–48, 72–73, 79–80.

In the arguments for a directed verdict, defense counsel faced the same dilemma. To argue to acquit William left Peter as the person positively identified as the driver. Not to argue to acquit William, because Peter would be left alone in the case as the person identified as the driver, would be a dereliction of counsel's duty to William. Transcript at 138–41.

■ 5. The conflict was adequately brought to the attention of the trial court. Not only has this court found that the petitioner's attorney objected to consolidation, but also at trial the prosecutor delivered the following opening statement:

I also expect that there may well be some conflict in the evidence to come from the People's own witnesses as to the identity of the man with the gun, as to whether that was the defendant Peter Vriner or the defendant William Vriner. I advise you of that at this time because I believe that may well be one of the factual issues which you'll have to resolve in this case. So I invite your close attention to the witnesses as they testify and tell

you what they saw, found, and heard that evening in their own words. Thank you. Transcript at 26.

■ 6. That opening statement should have alerted the trial judge to the existence of a conflict which would render defense counsel's services ineffective. The Judge's failure to perceive indicia of conflict and warn the accused was error. *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); *United States v. Gaines*, 529 F.2d 1038, 1043–44 (7th Cir. 1976); *United States v. Mandell*, 525 F.2d 671, 677 (7th Cir. 1975).

■ 7. The court notes that, under the circumstances presented in this case, a prosecutor should call to the attention of the court and opposing counsel the possibility of prejudicial conflict. A prosecutor has an obligation to deal fairly and see that a defendant's constitutional rights are not violated.

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.

*Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 655 (1935). "The State's attorney is a sworn officer of the court and it is his official duty to see that the defendant has a fair and impartial trial." *People v. Saylor*, 319 Ill. 205, 214, 149 N.E. 767 (1925).

■ 8. It is immaterial for purposes of determining whether a conflict existed that the accused had a retained, rather than appointed, attorney. The law cannot presume that the accused on his own could understand the complex dangers of joint representation. *United States v. Gaines*, 529 F.2d 1038, 1043 (7th Cir. 1976).

■ 9. The *Holloway–Gaines–Mandell* rule of automatic reversal should apply only in review by appellate courts. It should not apply in a habeas corpus proceeding. Once it has been determined that a conflict ex-

ists, a habeas court need not nullify a conviction solely because a trial court failed in its duty to make a record on whether the petitioner waived his right to counsel of undivided loyalty. The habeas court should assume the unfulfilled duty of the trial court and make its own determination under 28 U.S.C. § 2254(d) of the existence of a waiver.

10. Once the petitioner has shown the existence of an unconstitutional conflict of interest, the burden shifts to the respondent to rebut the presumption that a waiver did not occur. *Glasser v. United States*, 315 U.S. 60, 70, 62 S.Ct. 457, 464, 86 L.Ed. 680 (1941); *Carnley v. Cochran*, 369 U.S. 506, 514, 82 S.Ct. 884, 889, 8 L.Ed.2d 70 (1962).

11. It was the respondents' burden to show that the petitioner knowingly and intelligently waived his right to the assistance of counsel. The respondents have failed to discharge that burden. I find that the petitioner did not knowingly and intelligently waive his constitutional right to the assistance of counsel, that his sixth amendment rights were violated, and that he is therefore entitled to the issuance of a writ of habeas corpus.

IT IS THEREFORE ORDERED, that a writ of habeas corpus hereby issue as prayed. The respondents and each of them are commanded forthwith to discharge the petitioner, Peter Vriner, from further detention or commitment or imprisonment by reason of the herein described conviction of the crimes of unlawful use of weapons and of armed violence in the Circuit Court of Champaign County, Illinois.

IT IS FURTHER ORDERED that the stay of commitment of the petitioner heretofore entered pending the disposition of this petition, be, and hereby is, made final and absolute and that the petitioner be discharged from custody and go hence without day.