Commonwealth *v.* Small, Appellant.

498

Argued November 15, 1968. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Leonard Barkan,* for appellant.

*Roger F. Cox,* Assistant District Attorney, with him *James D. Crawford,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, May 9, 1969:

The Court being equally divided, the judgment of sentence is affirmed.

OPINION BY MR. CHIEF JUSTICE BELL IN SUPPORT OF AFFIRMANCE, May 9, 1969:

In support of the affirmance of the Judgment of Sentence, Mr. Chief Justice BELL files the following Opinion:

The prosecutrix in this case alleged that on two occasions the appellant and two codefendants forced her to accompany them to a secluded spot on the outskirts of Philadelphia and there, without her consent and against her will, forced her by threats and actual violence (1) to have intercourse with them, and (2) to commit sodomy. One codefendant was acquitted on all counts; the other codefendant was found guilty on all counts; the appellant was found guilty of all charges except assault.

At the trial, all three defendants were represented by the same Court-appointed counsel. Appellant Small now alleges that this dual counsel representation involved a conflict of interest which violated his Constitutional right to a fair trial. In order to support this contention, namely, that this representation by one attorney of both the convicted defendants created a conflict of interest, appellant would have us far exceed the scope of the prior conflict-of-interest decisions of this Court, and extend the law in this area. Cf. *Commonwealth v. Resinger*, 432 Pa. 398, 248 A. 2d 55; *Commonwealth v. Wilson*, 429 Pa. 458, 240 A. 2d 498; *Com. ex rel. Gallagher v. Rundle*, 423 Pa. 356, 223 A. 2d 736.

In *Commonwealth v. Wilson*, 429 Pa., supra, the Court said (page 463): "Admittedly, Whitling announces the prophylactic rule that whenever a conflict of interest reveals itself to an appellate court the conviction below cannot stand, even though the appellant may have been unable to show that any specific harm befell him at trial. *However, one never reaches this*

*prophylactic rule unless and until the defendant can demonstrate that a conflict in fact existed at trial.*\* Unfortunately for appellant, there is no prophylactic rule equating dual representation with conflict of interest. Quite to the contrary, this Court has held that dual representation alone does *not*\*\* amount to a conflict of interest." With this statement of the law, I strongly agree.

*Com. ex rel. Whitling v. Russell,* 406 Pa. 45, 176 A. 2d 641, upon which appellant also relies, is also distinguishable. In that case, two brothers were tried and convicted on a charge of sodomy. The appellant in that case maintained that he was innocent, but that his brother was guilty; they therefore had antagonistic defenses which could not have been reconciled. This clearly created a conflict of interest, since it would have been impossible for one attorney to effectively defend one without incriminating the other.

Unlike the facts in *Whitling,* the prior statements and the trial testimony of the two defendants are consistent, and both had the same defense—consent. Neither of them had antagonistic defenses, but both denied the use of force and both testified to consent. The primary issue in the rape case against both defendants was whether or not force was used. Not only was their testimony on this issue not antagonistic, but neither the prior statement to the police nor the trial testimony of codefendant Lare implicated the appellant in any way beyond appellant's own testimony. Lare's statement to the police following their arrest did not even mention Small. At trial, Lare merely testified that Small had intercourse with the prosecutrix, and Small acknowledged this.

---

\* Italics, ours.

\*\* Italics in original Opinion.

Lare mentioned the sodomy charge against Small only once. Lare stated that he heard Small tell the police after their arrest that he, Small, did commit sodomy. This admission was verified (a) by the police, and (b) by appellant himself. At the trial, Small admitted that, after he read the prosecutrix's incriminating statement, he admitted the sodomy charge only because he thought that it would somehow hurt her.*

Defendant Small never raised at his trial this alleged conflict of interest arising from dual counsel representation.

My review of the evidence convinces me (1) that the testimony and statements of the two defendants were not contradictory, and (2) that they were rendered necessary to a certain extent by the testimony of other witnesses and by the prior oral statements of both Lare and Small, and (3) that the interests and the actual defense of the two codefendants to the charge of rape were exactly the same and were not inconsistent or adverse or contradictory or conflicting, and (4) that neither tried to exonerate himself at the expense of the other, and (5) that there was no actual conflict of interest in fact shown at the trial.**

For these reasons, I would affirm the Judgment of Sentence.

———

OPINION BY MR. JUSTICE ROBERTS IN OPPOSITION TO THE ORDER, May 9, 1969:

Appellant and two codefendants were tried together on various charges including assault and battery, in-

———

* Thereafter Small adamantly denied that he had committed sodomy.

** After a conviction, it is easy for an astute lawyer or Judge to think of tactics, strategy, points for different or further cross-examinations, or motions or defenses which might or should have been made, adopted or pursued. If this is to be the test, realistic Justice is one with Nineveh and Tyre.

decent assault, aggravated assault and battery, assault and battery with intent to ravish, rape, sodomy and corrupting the morals of a minor child. Appellant was found guilty of all charges except indecent assault. At trial, all three were represented by the same counsel. Appellant now claims that such multiple representation resulted in a conflict of interest for his trial counsel and that we should reverse his conviction and grant him a new trial. I agree.

Prior to the trial one of appellant's codefendants gave a statement to the police which clearly implicated appellant. Further, at the trial, this same codefendant testified in a manner which clearly involved appellant in the acts which gave rise to the several indictments. I think that such a fact situation is so fraught with a conflict of interest that fairness requires a new trial be awarded.

The test for determining conflict of interest is quite clear: "If, in the representation of more than one defendant, a conflict of interest arises, the mere existence of such a conflict vitiates the proceedings, even though no *actual* harm results. The potentiality that such harm *may* result, rather than that such harm *did* result, furnishes the appropriate criterion." *Commonwealth ex rel. Whitling v. Russell*, 406 Pa. 45, 48, 176 A. 2d 641, 643 (1962); *Commonwealth v. James*, 429 Pa. 250, 240 A. 2d 368 (1968). See *Glasser v. United States*, 315 U.S. 60, 70, 62 S. Ct. 457, 465 (1942); *Randazzo v. United States*, 339 F. 2d 79 (5th Cir. 1964); *Porter v. United States*, 298 F. 2d 461 (5th Cir. 1962); *Holland v. Boles*, 225 F. Supp. 863 (N.D. W. Va. 1963). I am equally aware of the limitation this Court placed on the *Whitling* rule in *Commonwealth v. Wilson*, 429 Pa. 458, 463, 240 A. 2d 498, 501 (1968): "However, one never reaches this prophylactic rule [established in *Whitling*] unless and until the defendant can demon-

strate that a conflict in fact existed at trial. Unfortunately for appellant, there is no prophylactic rule equating dual representation with conflict of interest."

But I believe that in a dual representation situation where codefendant implicates the appellant in both his confession and trial testimony, such a potential for conflict *must* exist. The reason is quite simple: once codefendant in any way implicates appellant, appellant's defense strategy necessarily becomes tied to and is limited by that of codefendant. In order for joint counsel to ably represent his "implicating" client, he cannot contemplate a strategy which would include vigorous cross-examination of this client to discredit his testimony or confession. In these cases, in effect, trial counsel is placed in the anomalous posture of being able to help one client only at the expense of the best interests of the other. So when this occurs, defense counsel is forced to seek a compromise solution which will perhaps at best result in convictions of a lesser charge for each of his clients, while not completely absolving either one.

This is perhaps what happened in this case. Faced with codefendant's implicating statement to the police and his inability to challenge it, defense counsel likely adopted the strategy of attempting to establish a defense based on the victim's consent to the act. But appellant was entitled to more; he was entitled to the possibility of a defense (not limited by codefendant's statement) which would not even concede appellant's presence at the scene of the alleged crime. If he had been represented by counsel who only had one client, counsel might have chosen any one of several courses which were not available to his dual counsel. Counsel might have challenged codefendant's statement to the police; perhaps he would have vigorously cross-exam-

ined codefendant as to that part of his testimony which implicated appellant; he could have chosen not to take the stand at all. By listing these alternatives, I do not intend to criticize the manner in which trial counsel handled this case. I merely desire to stress these possibilities to demonstrate the almost impossible situation in which trial counsel found himself in trying to represent both clients. From this it should be abundantly clear why I believe appellant is entitled to a new trial, free from any conflict of interest in his representation.

Once a defendant has been afforded the right to counsel—no right is more basic to him and the guilt-determining process than the defendant's right to have his counsel free to exercise the full privilege of cross-examination within the range of the permissible rules of evidence. In this respect, defense counsel may not be circumscribed by any other considerations than the rules of evidence, the strategic trial decisions, and the best interests of his client. Certainly not permissible is any limitation upon counsel's conduct of the defense *created* by his *additional* representation and *regard* for the interests of his *other* client—the appellant's codefendant—whose pretrial statement and trial testimony implicated appellant. Thus on the instant record, appellant's counsel was indeed presented with the very evil of conflict in fact not allowed by *Whitling*. See *Glasser v. United States*, supra.*

Appellant also claims that because his codefendant's out-of-court statement was introduced at the trial,

---

* "[T]he 'assistance of counsel' guaranteed by the Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests. If the right to the assistance of counsel means less than this, a valued constitutional safeguard is substantially impaired." (315 U.S. at 70)

the holding of *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620 (1968), necessitates the granting of a new trial. But this case is different from *Bruton* in one crucial respect: here appellant's codefendant testified at trial. In *Bruton*, the Supreme Court made it clear that their concern was a deprivation of "petitioner's right of cross-examination secured by the confrontation clause of the Sixth Amendment." 391 U.S. at 126, 88 S. Ct. at 1622. Since codefendant did give appellant an opportunity for cross-examination by taking the stand, *Bruton* does not directly control.

However, this is true only if one ignores the reality of the conflict of interest outlined above. Although codefendant's presence on the stand made him subject to cross-examination, it is obvious that because counsel who would cross-examine him was *also his own defense counsel*, that cross-examination, if any, would be of little help to appellant's case. It is clear that when the *Bruton* Court spoke of the right of cross-examination they were contemplating more than a mere gesture. In effect, they said that codefendant's out-of-court statement could be admitted only if codefendant was subject to *real* cross-examination. Therefore, I conclude that because of the conflict of interest inherent in the dual representation, appellant was denied his *Bruton* right to cross-examination as much as if codefendant had refused to take the stand. For this additional reason, I conclude that appellant is entitled to a new trial.

For the reasons outlined above, I dissent from the order.

Mr. Justice EAGEN and Mr. Justice O'BRIEN join in this opinion.