396 A.2d 709

COMMONWEALTH of Pennsylvania

v.

Ralph BRACERO, Appellant.

COMMONWEALTH of Pennsylvania

v.

Frank BRACERO, Appellant.

Superior Court of Pennsylvania.

Argued June 15, 1978.

Decided Dec. 29, 1978.

Petition for Allowance of Appeal Granted April 11, 1979.

Joel M. Breitstein, Lebanon, for appellant at No. 2386.

Keith L. Kilgore, Lebanon, for appellant at No. 2481.

Thomas S. Long, Assistant District Attorney, Lebanon, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

CERCONE, Judge:

The instant separate appeals, taken on behalf of brothers Frank and Ralph Bracero, raise the question of whether they were denied effective assistance of counsel due to a conflict of interest during their joint trial for aggravated assaults they allegedly perpetrated on Angel and Geraldo Rolon. The relevant facts are as follows:

In April, 1976 an altercation between the Braceros and Rolons arose at a baseball field and resulted in the Rolons being bludgeoned by baseball bats. According to the Rolons the culprits were appellants Ralph and Frank Bracero, and their father Manolin. When appellants were arrested and charged with aggravated assault, they requested that counsel be appointed to defend them. Consequently, the court appointed Mr. Wiley Parker to represent them, and Mr. Parker satisfied himself that no conflict of interest would arise from dual representation of the brothers. The case proceeded to jury trial wherein the Rolons provided the aforementioned testimony concerning the assaults. Both Ralph and Frank Bracero testified on their own behalf and stated that their brother Alfredo and their father Manolin

were the assailants. The jury chose to believe the Rolons and appellants were convicted.[1] Post trial motions were filed and denied and it was approximately one year after appellant's trial, before Mr. Parker filed a petition for leave to withdraw as counsel for Ralph Bracero. As its basis the petition merely averred:

> "A conflict has arisen between the two defendants which precludes your applicant from continuing to represent both of them at the time of sentencing and on appeal."

There was nothing further in the petition sufficient to indicate the nature of the conflict, nor any indication that it had existed, much less tainted proceedings, previously. However, since the request was simply for leave to withdraw as counsel, the court granted it without further inquiry into the nature and severity of the conflict.[2] New counsel was appointed and represented Ralph Bracero during sentencing and in this appeal.

On November 29, 1977 Mr. Parker filed another petition for leave to withdraw, this time as counsel for Frank Bracero, because Frank Bracero wished to challenge Mr. Parker's effectiveness at trial on appeal. In this regard Mr. Parker informed the court:

1. It should be noted that appellants also challenge the sufficiency of the evidence to convict them, but this claim is frivolous. A mere conflict in evidence between the victims and the accused obviously does not require reversal of a conviction. Viewing the evidence in the light most favorable to the Commonwealth, appellants' guilt was proved beyond a reasonable doubt. See, e. g., *Commonwealth v. Stephany,* 228 Pa.Super. 184, 323 A.2d 368 (1974).

2. Insofar as the appointment of separate counsel is concerned, generally courts should accept present counsels' representations of conflicts of interest without the need for further inquiry. See, e. g., *Shuttle v. Smith,* 296 F.Supp. 1315 (Vt.1969); *State v. Davis,* 110 Ariz. 29, 514 P.2d 1025 (1973); *State v. Brazile,* 226 La. 254, 75 So.2d 856 (1954). These decisions rest upon the fact that attorneys representing two or more defendants in a criminal matter are usually in the best position, professionally and ethically, to determine when a conflict of interest exists. Furthermore, upon discovering a conflict of interest, an attorney has the obligation to so advise the court immediately. These considerations apparently underlie the ABA Project on Standards Relating to the Administration of Criminal Justice—The Defense Function § 3.5(b)(1974).

"I spoke to Mr. Bracero shortly after he was sentenced on this charge and indicated to him some of the facts and circumstances surrounding my discussions with his brother, Ralph, when I represented both of them, and he Frank, indicated to me that he wished to file this application. . . ."

Mr. Parker admitted that his conversations with appellants prior to trial had not established a conflict, but argued that the absence of a colloquy on the record negating the possibility of a conflict arising from dual representation required that appellants receive a new trial. Although the court permitted Mr. Parker to withdraw and again appointed new counsel for appeal, nothing further was done concerning the implications of a potential conflict of interest with regard to proceedings already concluded. In sum, the aforementioned averments of Mr. Parker represent the only foundation that appellants assert in support of their claim that they are entitled to a new trial due to a conflict of interest.

■■ Of course, the right to be represented by counsel is guaranteed by the sixth and fourteenth amendments and "contemplates the service of an attorney devoted solely to the interests of his client. The right to such untrammelled and unimpaired assistance applies both prior to trial in considering how to plead, *Von Moltke v. Gillies,* 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948), and during trial, *Glasser v. United States,* 315 U.S. 60, 70, 62 S.Ct. 457, 86 L.Ed. 680 (1942)." *United States ex rel. Hart v. Davenport,* 478 F.2d 203, 209 (3d Cir. 1973). However, as recently as in *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), the Supreme Court of the United States has stated that the principle which emerges from *Glasser* without ambiguity is that:

"Requiring or permitting a single attorney to represent codefendants, often referred to as joint representation, is not *per se* violative of constitutional guarantees of effective assistance of counsel. This principle recognizes that in some cases multiple defendants can appropriately be represented by one attorney; indeed, in some cases, cer-

tain advantages might accrue from joint representation. In Mr. Justice Frankfurter's view: 'Joint representation is a means of insuring against reciprocal recrimination. A common defense often gives strength against a common attack.' *Glasser v. United States,* supra, 315 U.S., at 92, 62 S.Ct., at 475 (dissenting)." *Holloway v. Arkansas,* supra, 98 S.Ct. at 1178.

In Pennsylvania the courts have followed this principle, and have added guidelines for determining when a conflict of interest h̀as arisen sufficient to vitiate the proceedings. In order to receive a new trial based upon a conflict of interest, appellants must show that a conflict of interest arose and actually existed during the trial, and that the conflict was of a type which created a potential of harm with regard to the accused's defense. *Commonwealth v. Breaker,* 456 Pa. 341, 344–45, 318 A.2d 354 (1974). Of course, if the accused can show that he had a defense inconsistent with that advanced by his co-defendant, or that counsel neglected his case to give a more spirited defense to a co-defendant, he satisfies the aforementioned criteria. *Id.* See also *Commonwealth v. Cox,* 441 Pa. 64, 270 A.2d 207 (1970). On the other hand, courts have generally found that no conflict of interest exists where co-defendants receiving joint representation present a joint defense, as by denying culpability and blaming other persons for the crimes. *Commonwealth v. Small,* 434 Pa. 497, 254 A.2d 509 (1969); *Commonwealth v. Resinger,* 432 Pa. 398, 248 A.2d 55 (1968); Annot., 34 A.L.R.3d 470 (1970). The difficulty with appellants' claims of conflict of interest and ineffective assistance of counsel in the instant case is that they fall precisely into this last category. Both appellants testified at trial that it was a third brother and their father, rather than they, who inflicted the beatings upon the Rolons. Once again in Mr. Justice Frankfurter's words in *Glasser v. United States,* supra: "A common defense often gives strength against a common attack."

Of course, something manifestly occurred *after trial* in the instant case which caused Mr. Parker to conclude that a

conflict of interest "has arisen," but the record itself supports the conclusion that the conflict did not arise prior to or during trial, and that Mr. Parker gave both appellants an equally spirited defense. Mr. Parker stated that he had inquired into the potential for a conflict of interest arising prior to trial and satisfied himself that none existed.[3] The most that can be conjectured from the proceedings after trial is that one of the brothers perjured himself during trial; but, there is not a scintilla of evidence to show that Mr. Parker's dual representation might have been the cause of such perjury.[4]

Finally, appellants assert that the court's failure to inquire into the potential for conflict of interest is reversible error per se.[5] The basis for this assertion appears to be *Commonwealth v. Werner,* 217 Pa.Super. 49, 268 A.2d 195 (1970), but *Werner* is inapposite. In that case we confronted a situation where joint representation was permitted despite the fact that appellant and his co-defendants entered conflicting pleas. Relying on *Commonwealth ex rel. Whitling v. Russell,* 406 Pa. 45, 176 A.2d 641 (1962), we determined that a conflict of interest had arisen which carried with it a potential for harm to appellant's case. Thus, our inquiry in *Werner* was directed to the question of whether the conflict had been waived. Since the only evidence of waiver on the record was a contradictory and ambiguous colloquy, we could not infer waiver so we awarded a new trial. In the instant case, because we have found no evidence of a conflict

3. It is acknowledged "attorneys are officers of the court, and 'when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath.'" *Holloway v. Arkansas,* 435 U.S. 486, 98 S.Ct. at 1179. [Citation deleted.]

4. In this connection appellants suggest that sibling affection would naturally cause one brother to protect another, and that dual representation would fortify this bond to the prejudice of one of the brothers. This suggestion is perfectly specious in this case in light of the fact that appellants both swore that a third brother and their father were the assailants.

5. This argument is based upon a comment Mr. Parker made concerning his second petition for leave to withdraw and the possibility that his stewardship of appellants' case had been ineffective.

of interest which created a potential for harm to appellants' trial, we need not reach the question of waiver. This is not to say we do not advocate the trial court's conducting a colloquy in cases involving multiple representation of criminal defendants, for we do. *Commonwealth v. Werner,* 217 Pa.Super. at 57, 268 A.2d 195. See also ABA Project on Standards Relating to the Administration of Criminal Justice—The Function of the Trial Judge § 3.4(b)(1974).[6] We only hold that the absence of such a colloquy does not, *per se*, entitle appellants to a new trial.

In conclusion, we find that the record does not warrant the inference that a conflict of interest affecting Mr. Parker's representation of appellants during trial existed, notwithstanding Mr. Parker's post-trial petitions to withdraw and his misapprehension of the effect of the court's failure to conduct a colloquy concerning a potential conflict of interest.

For the foregoing reasons, the judgments of sentence are affirmed.

SPAETH, J., files a dissenting opinion in which PRICE, J., joins.

HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, dissenting:

I disagree with the majority that the record shows "no evidence of a conflict of interest which created a potential for harm to appellants' trial." The record only shows that

6. In advocating that the trial judge conduct an on the record colloquy, we suggest the position of the Court of Appeals for the Second Circuit concerning when the colloquy should take place. Cases in the Second Circuit have held that the trial court's duty is not automatic, but is triggered when a potential conflict arises. When the conflict becomes apparent the trial judge should suspend the trial and conduct a hearing to determine whether a conflict of interest actually has arisen and to advise the defendant of his or her rights to independent counsel. See *Abraham v. United States,* 549 F.2d 236 (2d Cir. 1977); *United States v. Carrigan,* 543 F.2d 1053 (2d Cir. 1976); *United States v. Alberti,* 470 F.2d 878 (2d Cir. 1972); *cert. denied,* 411 U.S. 919, 93 S.Ct. 1557, 36 L.Ed.2d 311 (1973).

trial counsel satisfied himself before trial that no conflict existed, and that he prepared a common defense for appellants at trial. I should like to know *why* trial counsel withdrew as counsel for one of appellants before sentencing, and as counsel for the other a few months later. The record gives no explanation for these withdrawals. I should also like to know whether appellants would have chosen a common defense had they had separate counsel. In this regard, it seems to me the majority has approached the question of conflict of interest from the wrong angle; instead of dwelling on what happened with only one attorney, we should try to envisage what might have happened with separate attorneys. To do that, we need more information.

I also disagree with the majority's refusal to require that in every criminal case where one attorney represents two or more defendants, the trial judge must conduct a colloquy to determine whether a conflict of interest exists.

In *Campbell v. United States,* 122 U.S.App.D.C. 143, 144, 352 F.2d 359, 360 (1965), the Court of Appeals for the District of Columbia Circuit said:

When two or more defendants are represented by a single counsel, the District Court has a duty to ascertain whether each defendant has an awareness of the potential risks of that course and nevertheless has knowingly chosen it. . . . The judge's responsibility is not necessarily discharged by simply accepting the co-defendants' designation of a single attorney to represent them both. An individual defendant is rarely sophisticated enough to evaluate the potential conflicts, and when two defendants appear with a single attorney, it cannot be determined, absent inquiry by the trial judge, whether the attorney has made such an appraisal or has advised his clients of the risks.

In *Commonwealth v. Werner,* 217 Pa.Super. 49, 268 A.2d 195 (1970), we quoted this statement, and strongly endorsed a colloquy to determine possible conflict of interest and voluntary and intelligent waiver.

Unless a pre-trial colloquy is made mandatory, the trial judge cannot be certain that counsel has lived up to his professional obligation to "explain fully to each client the implications of common representation and [to] accept or continue employment only if the clients consent." *ABA Code of Professional Responsibility*, EC 5–16 (1969). Not knowing whether or to what extent counsel has fulfilled this obligation, the judge cannot know whether the defendants have voluntarily and intelligently waived their Sixth Amendment rights. The record in the present case illustrates this statement. Had the majority felt it incumbent to consider waiver, appellants could have easily pointed to the record to show that they did not have sufficient information.

Furthermore, to make a pre-trial colloquy mandatory would encourage judicial efficiency, for potential conflict of interest problems would be identified in time to take remedial measures without adversely affecting the trial. *See generally*, Hyman, *Joint Representation of Multiple Defendants in a Criminal Trial: The Court's Headache*, 5 Hofstra.L.Rev. 315–344 (1977). In this regard, the Second Circuit approach discussed in footnote 6 of the majority opinion is inferior to the District of Columbia Circuit approach. Moreover, since the Second Circuit approach gives considerable discretion to the trial judge, who is required to have a colloquy only if a conflict has become apparent, it is likely that less colloquies will occur, with the result that remands will sometimes be necessary. In contrast, the District of Columbia approach ensures a careful inquiry into potential conflict at the outset with the result that the appellate court has a full record and should not have to remand.

Finally, a mandatory colloquy would be in the interest of all parties. It is perhaps most obviously in the defendant's interest to be aware of the ramifications of dual representation, but the Commonwealth also benefits. If no colloquy occurs, and the Commonwealth cannot prove that the defendants properly waived their Sixth Amendment rights, it . may have a difficult time on appeal because of the relatively lenient standard for reversal embodied in *Commonwealth v.*

*Breaker,* 456 Pa. 341, 318 A.2d 354 (1974). If a colloquy does occur, the appellate court is more likely to find waiver and will not need to reach the question of whether the *Breaker* standard was violated.

This court must vigorously enforce defendants' rights to pre-trial dual representation colloquies. The Supreme Court of this state has mandated that if lower court judges fail to conduct guilty plea colloquies, the appellate courts will grant new trials. *See Commonwealth v. Dilbeck,* 466 Pa. 543, 353 A.2d 824 (1976); *Commonwealth v. Schork,* 467 Pa. 248, 356 A.2d 355 (1976); *Commonwealth v. Minor,* 467 Pa. 230, 356 A.2d 346 (1976). Since the values protected by dual representation colloquies are of the same stature as those guaranteed by guilty plea colloquies, the same sanction should be evoked in both cases.

I should vacate the judgments of sentence and remand for new trial.

PRICE, J., joins in this opinion.