441 A.2d 1258

**COMMONWEALTH of Pennsylvania**

v.

**Pearlie DuBOSE, Jr., Appellant.**

Superior Court of Pennsylvania.

Submitted March 21, 1980.

Filed Feb. 19, 1982.

Petition for Allowance of Appeal Denied May 3, 1982.

333

Harvey W. Robbins, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

334

Before SPAETH, BROSKY and VAN der VOORT, JJ.

BROSKY, Judge:

Appellant, DuBose, was convicted of rape, criminal conspiracy, possessing instruments of crime generally, possession of prohibited offensive weapons and involuntary sexual intercourse. Post-verdict motions were denied and a sentence was imposed amounting to multiple current terms of imprisonment of 7½ to 20 years for rape, 7½ to 20 years for involuntary sexual intercourse, 5 to 10 years for conspiracy, 2½ to 5 years for possession of an instrument of crime. We affirmed the imposition of the judgment of sentence in *Commonwealth v. DuBose*, 239 Pa.Super. 712, 357 A.2d 198 (1976) (allocatur denied).

DuBose now seeks relief under the Post Conviction Hearing Act,[1] alleging ineffective assistance of counsel.[2] After a hearing at which DuBose's contentions were argued by new counsel, the P.C.H.A. court denied DuBose the relief he sought. DuBose appeals from that determination. We affirm the decision of the trial court.

Several questions, all concerning the effectiveness of trial counsel are raised on appeal. They are:

1. Was there a possibility of harm because the Defender's Association of Philadelphia represented the appellant and one or more other persons involved in this criminal incident?

2. Did defense counsel fail to provide competent representation in that he delayed interviewing and confirming the testimony of the alibi witnesses?

3. Did defense counsel fail to provide competent representation in that he failed to take photographs of the scene until six months after the incident?

1. 19 P.S. § 1180–1 et seq.

2. DuBose obtained new counsel for the first time of his PCHA proceeding hence he may now raise claims alleging his trial counsel was ineffective. *Commonwealth v. Gardner*, 480 Pa. 7, 389 A.2d 58 (1978).

4. Did defense counsel fail to provided (sic) competent representation inasmuch as he attempted to show the gang affiliation of alleged co-conspirators by introducing inadmissible Juvenile Court records rather than producing the alleged co-conspirators, or even attempting to produce them by subpoena, to testify about their gang affiliation?

5. Did the Court below err in not itself examining or in not allowing petitioner's counsel to examine the files of the District Attorney, which were subpoenaed by petitioner's counsel to enable petitioner's counsel to investigate the harm caused by the Defender's Association of Philadelphia representing one or more alleged perpetrators of the criminal incident?

In *Commonwealth v. Miller*, 494 Pa. 229, 233, 431 A.2d 233, 234–235 (1981), our Supreme Court said:

"[B]efore a claim of ineffectiveness can be sustained, it must be determined that, in light of all the alternatives available to counsel, the strategy actually employed was so unreasonable that no competent lawyer would have chosen it." *Commonwealth v. Hill*, 427 Pa. 614, 617, 235 A.2d 347, 349 (1967), once it has been determined that the particular course of action chosen by counsel had *some reasonable basis* designed to effectuate his client's interests, counsel will be deemed constitutionally effective. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). Additionally, there is a presumption in the law that counsel is effective, *Commonwealth v. Witherspoon*, 481 Pa. 321, 392 A.2d 1313 (1978); *Commonwealth v. Murray*, 452 Pa. 282, 305 A.2d 33 (1973); thus, the burden of establishing ineffectiveness rests upon appellant. *Commonwealth v. Shore*, 487 Pa. 534, 410 A.2d 740 (1980); *Commonwealth v. Logan*, 468 Pa. 424, 364 A.2d 266 (1976).

Our Supreme Court noted in *Commonwealth v. Westbrook*, 484 Pa. 534, 400 A.2d 160 (1979), that the Public Defender's Association of Philadelphia is a "law firm," *Commonwealth v. Via*, 455 Pa. 373, 316 A.2d 895 (1974), and as such, members of that office are prohibited from represent-

ing multiple clients who have inconsistent defenses. Thus, the law regarding conflicts of interest in dual representation, as stated in *Commonwealth v. Breaker*, 456 Pa. 341, 344–45, 318 A.2d 354, 356 (1974), is applicable:

> Our dual representation cases make several principles clear. First, "[i]f, in the representation of more than one defendant, a conflict of interest arises, the mere existence of such conflict vitiates the proceedings, even though no *actual* harm results. The potentiality that such harm *may* result, rather than that such harm *did* result, furnishes the appropriate criterion." *Commonwealth ex rel. Whitling v. Russell*, 406 Pa. 45, 48, 176 A.2d 641, 643 (1962). Second, a defendant must demonstrate that a conflict of interest actually existed at trial, because "dual representation alone does *not* amount to a conflict of interest." *Commonwealth v. Wilson*, 429 Pa. 458, 463, 240 A.2d 498, 501 (1968); *Commonwealth ex rel. Corbin v. Myers*, 419 Pa. 139, 213 A.2d 356 (1965), cert. denied, 386 U.S. 1013, 87 S.Ct. 1361, 18 L.Ed.2d 445 (1967). Third, "[t]o make the dual representation rise to a true conflict, appellant need not show that actual harm resulted, . . . but he must at least show the possibility of harm . . . ." *Commonwealth v. Wilson*, supra [429 Pa.] at 463, 240 A.2d at 501. Fourth, appellant will satisfy the requirement of demonstrating possible harm, if he can show, inter alia, "that he had a defense inconsistent with that advanced by the other client, or that counsel neglected his case in order to give the other client a more spirited defense." Id. Accord, *Commonwealth v. Cox*, 441 Pa. 64, 69, 270 A.2d 207, 209 (1970) (plurality opinion).

See also, *Commonwealth v. Dockins*, 263 Pa.Super. 164, 397 A.2d 798 (1979).

The alleged conflict of interest arises out of the representation by the Public Defender's Association of Du-Bose and Charles Frazier, a juvenile, at hearings related to the same criminal incident. The record clearly indicates

that Frazier's defense was that he took no part in the crime.[3] His trial attorney, Edward Crummett, stated

> Having reviewed the material in the Frazier file I concluded that Mr. Frazier would not be and could not be helpful inasmuch as he denied any knowledge of the crime.

While DuBose also claimed no involvement in the crime, it is clear that the defense posed by Frazier and DuBose are not either inconsistent or that the Public Defender's Association neglected DuBose's case in order to give Frazier a more spirited defense. Hence, we are unable to find that dual representation in such a form which would establish that DuBose's trial counsel provided him ineffective assistance.

■ DuBose also claims that his trial counsel was ineffective because "he delayed interviewing and confirming the testimony of . . . alibi witnesses." Apparently, there was a delay of four months prior to interviews being made of Janice Brandt and Wells Eaves. Trial counsel stated at the P.C.H.A. hearing that Ms. Brandt stated to him that she had no knowledge involving the criminal incident. Trial counsel indicated that he interviewed Eaves, however, DuBose did not pursue any questions as to the substance of that interview. As we stated earlier, Frazier stated that he had no knowledge of the crime. Trial counsel never testified regarding DeJesus. We are obliged to hold that trial counsel acted effectively. DuBose has not established that trial counsel was ineffective. Hence, this contention has no merit.

■ Trial counsel sought to have photographs of the street lamps taken six months after the incident where DuBose took his victim prisoner entered into evidence. The trial court excluded the evidence. DuBose argues his trial counsel was ineffective in failing to take or have photographs taken earlier.

The trial court said when it excluded the evidence:

3. DuBose also asserted a conflict existed in the Public Defender Association's representation of Louis DeJesus. The record does not support any claim that the Public Defender Association ever represented DeJesus.

THE COURT: ... [A]t this point your testimony is clearly not sufficient to have the photographs submitted into evidence. You don't show the scene at the time of the incident.

MR. CRUMMETT: They show the scene generally some six months later.

THE COURT: But you are not trying to show the general scene. Pardon me for interrupting. You want to show specific lights and so on. And these pictures were taken some six months later. That's clearly too distant in time, too remote in time.

MR. CRUMMETT: Is Your Honor accepting the argument that the City of Philadelphia goes around tearing down street lights?

THE COURT: You have no evidence in this record that those lights were or were not torn down. And I am not going to sit here and speculate on that point—stand here and speculate. If you want to produce evidence as to what the lighting was at the time, go ahead and produce it. I am telling you that you can't do it with photographs taken six months later. *That's totally too remote in time.* [Emphasis added].

So I sustain the objection as to that.

Nevertheless, there was no assertion leveled by DuBose that the failure of trial counsel to obtain the photographs earlier could have been used for cross-examination or in some other manner which would have resulted in any arguable inconsistency in the testimony of the victim, who identified DuBose. *Commonwealth v. Walley,* 262 Pa.Super. 496, 396 A.2d 1280 (1978). Thus, DuBose has failed to sustain his burden in the establishment of his trial counsel's ineffectiveness.

Next, DuBose asks:

Did defense counsel fail to provide competent representation inasmuch as he attempted to show the gang affiliation of alleged co-conspirators by introducing inadmissible Juvenile Court records rather than producing the alleged

co-conspirators, or even attempting to produce them by subpoena, to testify about their gang affiliation?

■ It is clear that the decision of the trial attorney not to call Frazier as a witness was reasonable because he knew Frazier would testify that he had no knowledge of the criminal incident. The record clearly indicates that the only other co-conspirator who may have been called was DeJesus. We are unable to find any evidence in the record to support DuBose's argument that DeJesus would have stated any knowledge regarding the incident. In this context, we are unable to discern how the relative gang memberships of each of the co-conspirators would have successfully enhanced DuBose's defense. We are unable to hold that DuBose's trial attorney assisted him ineffectively.

Finally, DuBose claims that the P.C.H.A. court erred in failing to permit P.C.H.A. counsel to examine or to examine itself files of the District Attorney's Office which P.C.H.A. counsel subpoenaed to determine whether a conflict of interest existed. As we have stated, it is the burden of the petitioner of the P.C.H.A. proceeding to establish the ineffectiveness of trial counsel.

In *Cuyler v. Sullivan*, 446 U.S. 335, 348–350, 100 S.Ct. 1708, 1718–1719, 64 L.Ed.2d 333, 346–347 (1980), the United States Supreme Court said:

> In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. In *Glasser v. United States*, [315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942)], for example, the record showed that defense counsel failed to cross-examine a prosecution witness whose testimony linked Glasser with the crime and failed to resist the presentation of arguable inadmissible evidence. 315 U.S., at 72–75, 62 S.Ct. at 465–467. The Court found that both omissions resulted from counsel's desire to diminish the jury's perception of a codefendant's guilt. Indeed, the evidence of counsel's "struggle to serve two masters [could not] seriously be doubted." Id. at 75, 62 S.Ct. at 467.

Since this actual conflict of interest impaired Glasser's defense, the Court reversed his conviction.

*Dukes v. Warden*, 406 U.S. 250, 92 S.Ct. 1551, 32 L.Ed.2d 45 (1972), presented a contrasting situation. Dukes pled guilty on the advise of two lawyers, one of whom also represented Dukes' codefendants on an unrelated charge. Dukes later learned that this lawyer had sought leniency for the codefendants by arguing that their cooperation with the police induced Dukes to plead guilty. Dukes argued in this Court that his lawyer's conflict of interest had infected his plea. We found " 'nothing in the record . . . which would indicate that the alleged conflict resulted in ineffective assistance of counsel and did in fact render the plea in question involuntary and unintelligent.' " Id., at 256, 92 S.Ct. at 1554, quoting 161 Conn. 337, 344, 288 A.2d 58, 62 (1971). Since Dukes did not identify an actual lapse in representation, we affirmed the denial of the habeas corpus relief.

Glasser established that unconstitutional multiple representation is never harmless error. Once the Court concluded that Glasser's lawyer had an actual conflict of interest, it refused "to indulge in nice calculations as to the amount of prejudice" attributable to the conflict. The conflict itself demonstrated a denial of "[t]he right to have the effective assistance of counsel." 315 U.S., at 76, 62 S.Ct. at 467. Thus, a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief. See *Holloway*, supra, 435 U.S., at 487–491, 98 S.Ct., at 1180–1182. But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance. See *Glasser*, supra, 315 U.S., at 72–75, 62 S.Ct., at 465–467.

(Footnotes omitted.)

The Supreme Court also stated:

*Holloway [Holloway v. Arizona*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)] reaffirmed that multiple

representation does not violate the Sixth Amendment unless it gives rise to a conflict of interest. See 435 U.S., at 482, 98 S.Ct. 1173, 55 L.Ed.2d 426. Since a possible conflict inheres in almost every instance of multiple representation, a defendant who objects to multiple representation must have the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial. But unless the trial court fails to afford such an opportunity, a reviewing court cannot presume that the possibility for conflict has resulted in ineffective assistance of counsel. Such a presumption would preclude multiple representation even in cases where " '[a] common defense . . . gives strength against a common attack.' " Id., at 482–483, 98 S.Ct. [1173,] at 1178, 55 L.Ed.2d 426, quoting *Glasser v. United States*, 315 U.S. 60, 92, 62 S.Ct. [457,] at 475, 86 L.Ed. 680 (1942) (Frankfurter, J., dissenting.) Id. at 348, 100 S.Ct. at 1718, 64 L.Ed.2d at 346; see also, *Commonwealth v. Pinhas*, 282 Pa.Super. 341, 422 A.2d 1147 (1980).

In the instant case, DuBose did not object to multiple representation at trial. He raised his ineffectiveness claims for the first time at the P.C.H.A. proceeding. DuBose sought to subpoena the District Attorney's files concerning their involvement in the prosecution of Frazier and DeJesus. The Commonwealth did not answer the subpoena and the P.C.H.A. court refused to order the Commonwealth to respond. The P.C.H.A. court's decision was rendered prior to the Supreme Court's decision in *Cuyler*, supra.

We are satisfied that DuBose was not denied "the opportunity to show that potential conflicts impermissibly imperiled his right to a fair trial." *Cuyler*, supra. at 348, 100 S.Ct. at 1718, 64 L.Ed.2d at 346. DuBose failed to show that the Defender's Association's records established that it had represented DeJesus. Furthermore, the record indicates that the Defender's Association's file concerning Frazier revealed that while Frazier was also represented by the Defender's Association, that he asserted a defense which was in no way inconsistent with that asserted in behalf of DuBose. In fact,

both Frazier and DuBose asserted the same defense that they were not involved in the crime whatsoever.

█ The trial court did not err in failing to order the District Attorney's office to produce files concerning Frazier and DeJesus. Such an order would have required the trial court to presume that the Defender's Association files were inaccurate and that the District Attorney's files would so indicate. We do not interpret *Cuyler*, supra, in a manner which requires such a result. The trial court provided DuBose with ample opportunity to demonstrate that an actual conflict of interest existed. DuBose simply failed to prove that such a conflict existed. Accordingly, the decision of the P.C.H.A. court was proper.

Order affirmed.

SPAETH, J., concurs in result.