451 A.2d 1373

COMMONWEALTH of Pennsylvania

v.

Richard W. EVANS, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 10, 1982.

Filed Oct. 22, 1982.

Richard L. Neff, Aliquippa, for appellant.

John L. Brown, Assistant District Attorney, Beaver, for Commonwealth, appellee.

Before BROSKY, CIRILLO and POPOVICH, JJ.

POPOVICH, Judge:

Appellant, Richard Evans, was found guilty by a jury of Theft by Unlawful Taking (18 Pa.C.S.A. § 3921); Receiving Stolen Property (18 Pa.C.S.A. § 3925); and Criminal Conspiracy (18 Pa.C.S.A. § 903). Post-trial motions were filed and denied. Sentence as to the Theft charge consisted of 2 to 5 years imprisonment; a similar concurrent sentence was imposed for the conviction of Receiving Stolen Property and a 6 to 12-month term, to be served concurrently to the aforesaid confinement, was issued for the Conspiracy offense.

The appellant raises three issues, all of which are intertwined with the contention that the trial court erred when it denied his counsel's motion to withdraw, in light of the representation that a conflict of interest existed. We agree.

The facts are not in dispute and appear, upon a review of the record, as follows: On January 17, 1980, Allan's Jewelry store, located in Rochester, Pa., was robbed. Out of this incident, the appellant, Richard Ross and Luis Davis were all charged with theft, receiving stolen property and conspiracy. At the preliminary hearing, all three defendants were represented by different counsel from the Public Defender's Office of Beaver County. In the course of the testimony

given therein, it became evident that co-defendant Ross would plead guilty and testify for the Commonwealth against the appellant and co-defendant Davis. In reaction thereto, appellant's counsel filed a Motion to Withdraw, in which he asserted, *inter alia:*

"5. That one of the three co-defendants, Richard Ross, has indicated that he will enter a Plea of Guilty to the aforesaid charges and further that he will testify on behalf of the Commonwealth against the other two defendants, Luis P. Davis, and Richard W. Evans.

6. That such testimony creates a conflict of interest between Ross and the other two co-defendants.

7. That such conflict of interest creates a possibility of harm to the defendant, Richard W. Evans, since there is dual representation of all the defendants herein."

Said Motion was denied by Order of court dated June 10, 1980, and was reaffirmed by the court en banc in its denial of appellant's post-trial motions. The rationale for the court en banc's decision was based upon its reading of the United States Supreme Court ruling in *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), which held, according to the post-trial court, that:

". . . [T]he possibility of conflict is insufficient to overturn a criminal conviction; and, that in order to demonstrate a violation of a defendant's Sixth Amendment rights, the defendant must establish that an actual conflict of interest existed and that the actual conflict of interest *adversely affected* his lawyer's performance. See *Cuyler,* supra., 100 S.Ct., at 1718." (Emphasis in original) (Lower Court Opinion at 8)

In analyzing the case at bar under the standard set forth in *Cuyler,* the court en banc held:

"[A]lthough there may have been an actual conflict of interest between the attorney from the Public Defender's Office who represented the Defendant Ross, who pled guilty, and the attorneys from the same Public Defender's Office who represented the two Defendants who were convicted at a jury trial, it was not established that the

dual representation which probably constituted a conflict of interest had in any way adversely affected the performance of the attorneys representing ... [co-defendant] Davis and [appellant]. In fact, in the instant case, quite the opposite is true.

The attorneys representing Davis and [appellant] not only obtained the information that Ross would testify on behalf of the Commonwealth from their fellow attorney in the Public Defender's Office but also learned at the preliminary hearing, which was several months before trial, what he would say. This enhanced their ability to prepare the case of [appellant] and [co-defendant] Davis; and when questioned by the Court en banc at argument on Defendants' after-trial Motions, both the attorney for [co-defendant] Davis and the attorney for [appellant] stated that each had represented his client to the best of his ability and no differently than he would have had the attorneys for the three Defendants not all been from the Public Defender's Office.

Therefore, we conclude that in the case now before this Court the conflict of interest test set forth by the U.S. Supreme Court in *Cuyler v. Sullivan,* [446 U.S. 335] 100 S.Ct. 1708 [64 L.Ed.2d 333] (1980) has not been met." (Lower Court Opinion at 8–9)

 Initially, we note that representation of co-defendants by different attorneys of the same law firm constitutes dual or joint representation. *Commonwealth v. Albertson,* 269 Pa.Super. 505, 410 A.2d 815 (1979). Our Supreme Court in *Commonwealth v. Westbrook,* 484 Pa. 534, 400 A.2d 160 (1979) observed that a public defender's association is a "law firm," *Commonwealth v. Via,* 455 Pa. 373, 316 A.2d 895 (1974), and, as such, members of that office are prohibited from representing multiple clients. *Commonwealth v. Du-Bose,* 295 Pa.Super. 332, 441 A.2d 1258 (1982). However, dual representation is insufficient to support a finding of conflict of interest, and is not a per se violation of constitutional guarantees of effective assistance of counsel. *See Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed.

680 (1942). To make the dual representation rise to a true conflict, appellant need not show that actual harm resulted, but must at least show the possibility of harm. *Commonwealth v. Westbrook, supra.* The law applicable to dual representation cases was delineated in *Commonwealth v. Breaker,* 456 Pa. 341, 344–45, 318 A.2d 354, 356 (1974):

"Our dual representation cases make several principles clear. First, '[i]f, in the representation of more than one defendant, a conflict of interest arises, the mere existence of such conflict vitiates the proceedings, even though no *actual* harm results. The potentiality that such harm *may* result, furnishes the appropriate criterion.' *Commonwealth ex rel. Whitling v. Russell,* 406 Pa. 45, 48, 176 A.2d 641, 643 (1962). Second, a defendant must demonstrate that a conflict of interest actually existed at trial, because 'dual representation alone does *not* amount to a conflict of interest.' *Commonwealth v. Wilson,* 429 Pa. 458, 463, 240 A.2d 498, 501 (1968); *Commonwealth ex rel. Corbin v. Myers,* 419 Pa. 139, 213 A.2d 356 (1965), cert. denied, 386 U.S. 1013, 87 S.Ct. 1361, 18 L.Ed.2d 445 (1967). Third, '[t]o make the dual representation rise to a true conflict, appellant need not show that actual harm resulted, . . . but he must at least show the possibility of harm . . . .' *Commonwealth v. Wilson,* supra [429 Pa.] at 463, 240 A.2d at 501. Fourth, appellant will satisfy the requirement of demonstrating possible harm, if he can show, inter alia, 'that he had a defense inconsistent with that advanced by the other client, or that counsel neglected his case in order to give the other client a more spirited defense.' Id. Accord, *Commonwealth v. Cox,* 441 Pa. 64, 69, 270 A.2d 207, 209 (1970) (plurality opinion)."

Since we conclude from the evidence discussed *infra,* that the appellant has established the existence of actual harm from the fact that counsel from the public defender's office represented both he and Richard Ross, we need not determine if the *Cuyler* case (which requires a showing of actual harm) alters the standard in Pennsylvania (which requires only a showing of potential harm) in dual representation

30

cases. *But see Commonwealth v. Pinhas,* 496 Pa. 210, 436 A.2d 618 (1981); *Commonwealth v. Kauffman,* 258 Pa.Super. 183, 392 A.2d 745 (1978) (Pa. Supreme Court has the right, in the exercise of its supervisory authority, to set higher standards for Pennsylvania than that enunciated by the U.S. Supreme Court).

The alleged conflict of interest arises out of the fact that the Public Defender's Office of Beaver County represented Richard Ross, who entered a plea of guilty to conspiracy to commit theft the day prior to appellant's trial. Ross did so as part of a plea bargain by which the District Attorney was to ask the court to drop the charges of burglary and receiving stolen property. In exchange for the prosecution's recommendation to the sentencing court that various charges be dropped, Ross agreed to testify at appellant's and co-defendant Davis' joint trial.

At trial, appellant admitted being in the company of Richard Ross on January 16–17, 1980. He stated he met Ross at a local bar in Ambridge and spent the next two days drinking. On the morning of January 17th, appellant recounted how Ross asked if he could accompany appellant back to Beaver Falls. Before they left, Ross spotted co-defendant Davis and asked him if he wanted to ride with them. When the trio had traveled to Rochester, someone mentioned they were hungry and appellant stopped at a Kroger's. On the way out of town, appellant was approaching a traffic sign when he heard Ross say "stop," jump out of the front seat of the vehicle and slam the door. Appellant reacted by turning around in his seat and asking Davis, "Where that guy go, man?" Before Davis had a chance to respond, "Ross was opening the front door and getting in the front seat. And he said, 'C'mon, let's go.'" (N.T. 230) Appellant left town, crossed a bridge and headed toward Aliquippa. Immediately after crossing the span, appellant was pulled over by police. Appellant thought it was because of the condition of his vehicle and told everyone, "Don't worry about it." (N.T. 231) Appellant denied ever seeing

the stolen merchandise prior to the preliminary hearing, although he did recall Ross saying to Davis, "Here, take this, Luis." (N.T. 232) Appellant also denied having any knowledge of the robbery prior to, during or after its commission.

Ross' version of what transpired is consistent with appellant's, to a point. For example, Ross agrees that appellant and he had been drinking for a few days prior to the incident in question, and to picking Davis up on their way out of Beaver Falls on January 17th. However, the disparity in the two versions arises with Ross' statement at trial that after the trio made a purchase at the Kroger's in Rochester, they stopped by Allan's Jewelry Store, at co-defendant Davis' suggestion. At this time, according to Ross, "[Davis] said it would only take thirty seconds to a minute, a minute to thirty seconds to rob it and get away." (N.T. 149) Thereafter, the three went down to Hine's Bar in Ambridge. About 1:00 p.m., they went back to Rochester. As Ross stated in court, "We drove back down to Allan's Jewelry Store, stopped the car. Luis [Davis] got out. I let him out. We pulled up the street aways. Then that's when the place got robbed." (N.T. 147) Additionally, Ross recounted how Davis came running back to the vehicle and saying, "[t]o go in a hurry." (N.T. 148) Appellant complied, but the group was apprehended a short distance away by the local authorities. Ross also reaffirmed the statement by Davis about robbing the store.

It is abundantly clear, from an examination of the aforesaid, "that [appellant] had a defense inconsistent with that advanced by the other client[-Ross]." *Commonwealth v. Breaker, supra.* Here, appellant denied having any advance knowledge that a crime was going to be committed, let alone that there was an airing among the trio as to how the theft would be executed (time-frame). This is in direct conflict with Ross' version, which portrays the appellant as being aware of the robbery prior to its commission, and playing a vital role (driving the getaway vehicle) in facilitating their

(foiled) escape.[1] Thus, instantly, we do not have a case "where co-defendants receiving joint representation present a joint defense, as by denying culpability and blaming other persons for the crimes." *Commonwealth v. Bracero,* 262 Pa.Super. 189, 194, 396 A.2d 709, 711 (1978). Rather, we have a defense asserted by appellant which was inconsistent with that stated by Ross. Therefore, appellant established that a conflict of interest did exist, *see Commonwealth v. Pinhas, supra,* that "impermissibly imperiled his right to a fair trial." *Commonwealth v. DuBose, supra,* 295 Pa.Super. at 341, 441 A.2d at 1263; *see also Commonwealth ex rel. Whitling v. Russell,* 406 Pa. 45, 49, 176 A.2d 641, 643 (1962) (where appellant claimed that his co-defendant was guilty of the offense charged, and testified to same at joint trial, Court held: "Under the instant facts it is evident that the conflict of interest created by Attorney McGill's appointment as counsel for both defendants was highly prejudicial to appellant's rights."). In accordance with the dictates of *Cuyler* and *Breaker,* we find that appellant is entitled to the

---

1. This is consistent with the "actual harm" the Court in *Cuyler v. Sullivan,* 446 U.S. 335, 350–351, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333, 347 (1980) was referring to when it stated:

> "[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief. But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." (Citations omitted) *Id.* at 350–351, 100 S.Ct. at 1719, 64 L.Ed.2d at 347.

Instantly, attorneys from the public defendant's office not only represented clients (appellant and Richard Ross) whose versions of the incident in question were at odds, *compare Commonwealth v. Jones,* 300 Pa.Super. 338, 446 A.2d 644 (1982), but also negotiated a plea bargain for one of the three defendants which required, as a condition to its implementation by the District Attorney's Office, that a co-defendant (Richard Ross) testify against the appellant. As was aptly stated in *Commonwealth v. Pinhas,* 496 Pa. 210, 436 A.2d 618 (1981), which also dealt with a conflict of interest claim, "[w]hat could be more conclusive evidence of a conflict of interest and this was known to all parties and the court before the jury was picked." *Id.,* 496 Pa. at 213, 436 A.2d at 620. Thus, we find, in accordance with the standard set forth in *Cuyler* (actual harm), as well as that delineated in *Commonwealth v. Breaker,* 456 Pa. 341, 318 A.2d 354 (1974) (potential harm), appellant is entitled to the relief requested.

relief requested. Therefore, the judgment of sentence is reversed and appellant is awarded a new trial.

CIRILLO, J., files a dissenting opinion.

CIRILLO, Judge, dissenting:

I believe that Pennsylvania should adopt the holding of the United States Supreme Court in *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1709, 64 L.Ed. 333 (1980), which would require a defendant to demonstrate that dual representation and actual harm, as opposed to mere potential harm exists, in order to establish a conflict of interest, sufficient to constitute a denial of his sixth amendment right to effective assistance of counsel.[1] Moreover, the present record fails to establish that the appellant suffered actual or potential harm as a result of dual representation. Therefore, I respectfully dissent.

While dual representation clearly exists since the public defender's office represented co-defendants, I cannot agree with the majority's finding that appellant had a defense inconsistent with that of his co-defendant, Ross, which resulted in actual harm to him. First, this Court has stated that a defendant's asserted defense is not inconsistent with that of his co-defendant when the co-defendant offers *no* defense, but instead pleads guilty. *Commonwealth v. Albertson,* 269 Pa.Super. 505, 410 A.2d 815 (1979).

Secondly, *Commonwealth v. Cox,* 441 Pa. 64, 270 A.2d 207 (1970), reveals an additional factor which is not evident in the majority's reference to *Cox,* which cites *Commonwealth v. Breaker,* 456 Pa. 341, 318 A.2d 354 (1974). In *Cox,* the court stated:

1. I agree with Justice Nix's concurring opinion in *Commonwealth v. Pinhas,* 496 Pa. 210, 436 A.2d 618 (1981), where he stated that a defendant is only denied his sixth amendment right to effective assistance of counsel where the actual existence of a conflict is shown, citing *Cuyler.* Further, the acceptance of a lesser standard would require this court to engage in speculation in an effort to assure effective representation and would result in the overturning of otherwise valid convictions, solely for dual representation.

A conflict may be established if a defendant can show either: (1) that he had a substantial defense, *which was not raised,* that was inconsistent with that of his co-defendant. . .

*Cox,* 441 Pa. at 69, 270 A.2d at 210. (emphasis added).

It seems obvious that the rationale for this rule is the belief that an attorney cannot provide effective assistance if he fails to assert a substantial defense of one client, in order to serve a conflicting interest of another. *Commonwealth ex rel Gallagher v. Rundle,* 423 Pa. 356, 223 A.2d 736 (1968). Therefore, the holdings in *Cox* and *Breaker*[2] are inapposite under the present facts since the co-defendant, Ross, pled guilty and appellant did raise and argue defense at trial.

Apart from appellant's misplaced reliance upon *Cox* and *Breaker,* the courts have held that a conflict of interest might arise where an attorney represents a defendant as well as his accuser, as in the instant case. *Commonwealth v. Small,* 434 Pa. 497, 254 A.2d 509 (1969).

The majority in *Small,* however, held that the representation of a defendant and a co-defendant or accuser is nothing more than dual representation, which alone does not amount to a conflict of interest. *Id.,* 434 Pa. 504, 254 A.2d at 501. The dissent reasoned that a conflict of interest must exist, couched in the following terms:

In order for joint counsel to ably represent his 'implicating' client, he cannot contemplate a strategy which would include vigorous cross-examination of this client to discredit his testimony or confession.

In the instant case, appellant's counsel vigorously cross-examined the co-defendant for an extended period of time, eliciting as much information as any private counsel could

2. In *Breaker,* counsel for a co-defendant who had incriminated other persons charged, volunteered to represent the appellant who appeared at trial without counsel. Subsequently, the appellant pled guilty as per the advice of counsel. The Supreme Court, rightly so, stated that this dual representation created a potential for harm since counsel's approach was to acquire as many guilty pleas as possible, to establish cooperation and a more lenient sentence for his original client.

have. As such, there was no potential or actual harm sustained by appellant. Accordingly, I would affirm the judgment of sentence.